440 So.2d 628 (1983)
Harold Ivan YESNES, Appellant,
v.
STATE of Florida, Appellee.
No. AQ-328.
District Court of Appeal of Florida, First District.
November 16, 1983.
*629 P. Michael Patterson, Pensacola, for appellant.
Jim Smith, Atty. Gen., and Andrew Thomas, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
The defendant, Yesnes, was convicted upon seven informations charging offenses of sexual battery and producing or possessing illicit photographs depicting sexual conduct by minors. On this appeal, he seeks reversal based on error in the trial court's orders denying defendant's motions to dismiss three of the informations, his motions to suppress photographs and other materials seized by law enforcement officers, and his motion to withdraw his plea of nolo contendere. We affirm in part, reverse in part, and remand.
Based on an affidavit by a Pensacola police officer, a warrant was issued authorizing the search of defendant's residence for "certain photographs depicting in whole or in part the female genitials [sic] in the state of sexual excitement." As a result, the officers searched the premises and seized photographs, magazines, and books which contained explicit or strong sexual conduct. Thereafter, defendant was charged in seven informations with the following offenses.
In Case No. 81-5233, the amended single-count information charged that defendant, between January 1 and December 9, 1981, unlawfully exhibited photographs depicting sexual conduct involving a minor, in violation *630 of Section 847.014(2)(b)1, Florida Statutes.
In Case No. 81-5234, the single-count information charged that defendant, on December 14, 1981, unlawfully possessed with intent to sell photographs depicting sexual conduct involving a minor, in violation of Section 847.014(2)(b)2, Florida Statutes.
In Case No. 81-5235, the single-count information charged that defendant, between August 1 and August 31, 1981, unlawfully committed a sexual battery upon T.M.P., a minor female over the age of eleven years, in violation of Section 794.011(4)(c), Florida Statutes.
In Case No. 81-5236, the three-count information charged in Count One that defendant, on December 26, 1981, committed sexual battery upon S.N., a minor female over the age of eleven years, in violation of Section 794.011(4)(c), Florida Statutes; Count Two charged that defendant, on the same date, unlawfully produced a photograph depicting sexual conduct involving S.N., a minor female, in violation of Section 847.014(2)(a)1, Florida Statutes; and Count Three charged that defendant, on the same date, unlawfully procured S.N., a minor female, to participate in photographs depicting sexual conduct involving a minor, in violation of Section 847.014(2)(a)2, Florida Statutes.
In Case No. 81-5237, the three-count information charged that defendant, on the same date as in Case No. 81-5236, committed the same three offenses with D.R.N., another minor female.
In Case No. 81-5238, the two-count information charged in Count One that defendant, between August 1 and August 31, 1981, unlawfully produced photographs depicting sexual conduct involving T.M.P., the same minor female alleged in Case No. 81-5235, in violation of Section 847.014(2)(a)1, Florida Statutes; Count Two charged that defendant, between the same dates, procured that same minor female to participate in photographs of sexual conduct involving a minor, in violation of Section 847.014(2)(a)2, Florida Statutes.
In Case No. 81-5239, the three-count information charged in Count One that defendant, between July 1 and July 31, 1980, unlawfully committed a sexual battery upon S.D.R., a minor female over the age of eleven years, in violation of Section 794.011(4)(c), Florida Statutes; Count Two charged that defendant, between the same dates, unlawfully produced photographs depicting sexual conduct involving S.D.R., a minor female, in violation of Section 847.014(2)(a)1, Florida Statutes; and Count Three charged that defendant, between the same dates, unlawfully procured that same minor female to participate in photographs depicting sexual conduct by a minor, in violation of Section 847.014(2)(a)2, Florida Statutes.
Defendant filed Rule 3.190(c)(4) motions to dismiss four of the informations. He also filed a motion in all cases, which was later amended, for suppression of the evidence obtained in the search of his residence.
Asserting, among other grounds, the legal insufficiency of the affidavit on which the warrant was issued, the trial court granted defendant's motion to dismiss Counts Two and Three in Cases No. 81-5236 and 81-5237 and Count One of Case No. 81-5238. The court denied the motions to dismiss in all other respects and denied the motions to suppress.
Thereafter, defendant entered a plea of nolo contendere to the remaining charges, reserving his right to appeal the denial of these motions. Exactly a week later, however, defendant notified the court by letter that his nolo plea had not been entered freely, knowingly, and voluntarily because he had been under the influence of drugs at the time and had been coerced by his court-appointed counsel. The court treated the letter as a motion to set aside the nolo plea and, after the hearing (discussed infra), denied it. Defendant was adjudged guilty and sentenced in each case to serve, concurrently, ninety days in jail and ten years probation.
*631 We consider defendant's appeal from the several judgments of conviction as a consolidated appeal.

MOTIONS TO DISMISS
We find no error in the trial court's denial of the motions to dismiss except as to Count One in Case No. 81-5237. In that case, the state admitted it had no evidence to prove the threat of future retaliation, alleged in Count One. Hence, that count should also have been dismissed. But the briefs indicate that apparently Count One was amended to charge "contributing to the delinquency of a minor," in violation of Section 827.04(3), Florida Statutes, and that defendant entered a nolo plea to that amended charge. The record contains a copy of an "arrest report" indicating defendant was adjudicated guilty of contributing to the delinquency of a minor and sentenced to one year probation and ninety days in county jail on such charge, but the record does not contain any amended information or judgment thereon in Case No. 81-5237. In view of this confused state of the record and because of our disposition of the other issues on this appeal, we decline to consider the propriety and sufficiency of the apparent amendment to that count. On remand, the record should be clarified to reflect the actual disposition of this count.

MOTION TO SUPPRESS
The search warrant was issued on the basis of an affidavit submitted by an investigating officer which recited the following facts to establish the required probable cause:
The above named subject has in his possession a large quantity of photographs he admits having taken of a large number of young females in various stages of undress depicting in whole or in part the female genitials [sic] in the state of sexual excitement and that he further has directed or performed the taking of said photographs of persons under the age of 18 years old. Also that he has procurred [sic] persons under the age of 18 to participate in such photographs.
Also, that he does now have and keep in his possession such photographs which have been viewed by white female, L.R.F. age 14, which were of other young females under the age of 18 years old. Also, that this same girl was offered a job modeling and coherced [sic] into posing for photos of her breast [sic] on or about the middle of August, 1981, at which time this girl was shown many other photos of other young girls which Mr. Yesnes claimed to have taken for the purposes of modeling, depicting young girls totally nude.
Further information gathered during this investigation [sic] this officer interviewed another confidential informant on 12/9/81, at 4:30 p.m. who claims to have been offered a job with this same man on or about 11/5/81, who also approached her and wanted her to model after first offering her a job making Pizzas [sic]. After going with this man to his house she was warned by another white female employee around the age of 18 not to take the job because this man takes pictures of young girls in the nude. This unidentified white female also informed my informants she had seen photos of young girls performing oral sex on Mr. Yesnes. My informant indicated that her friend, white female L.R.F. had been employed by this man and this girl said she knew of the L.R.F. girl and had seen pictures of her breast [sic]. Informants advised that this subject keeps said photographs on premises.
Defendant contends there is nothing in the affidavit upon which the issuing court could base a finding that the informants were reliable and, for this reason, that the affidavit is legally insufficient to show probable cause to issue a search warrant under the "two-prong test" of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), as applied in Davis v. State, 346 So.2d 141 (Fla. 1st DCA 1977).
The state, on the other hand, argues that the proper test of the affidavit's sufficiency *632 is whether a reasonable person, knowing all the facts the affiant knew, would believe probable cause existed to search defendant's residence. E.g., State v. Heape, 369 So.2d 386 (Fla. 2d DCA 1979). The essence of the state's contention is that the affidavit is sufficient because the informants, although unknown, appear to be victims and corroborate each other. The state's brief does not point to any other recitals in the affidavit evidencing the veracity or reliability of the informants or their information.
We agree with defendant that the affidavit is totally lacking in facts sufficient to show the requisite veracity or reliability of the unnamed informants and the information supplied by them. The informant's information regarding activity by the defendant within a sufficiently recent time to support a search warrant came from an unknown and unidentified white female whose credibility was not vouched for by the informant, much less the affiant. The last sentence of the affidavit provides the only reference to the location where the photographs might be located. Nowhere does the affiant state that the photographs were taken or displayed at the location sought to be searched. In fact, it does not appear that the affiant or the informants have ever been to the location sought to be searched.
In addition, the affidavit contains no assertion of affiant's personal knowledge or observations that corroborate the information from the informants in any respect. We do not accept the trial court's interpretation that the affidavit is based upon defendant's admissions directly to the affiant. The affidavit does not say that the affiant talked with the defendant; rather, it suggests that the affiant was relying solely upon information supplied to him by the unnamed informants  and even then it is not possible to determine with any degree of certainty what information was supplied by which informant or whether all information came to the officer through a single unnamed informant. The affidavit fails to recite facts or indicia of the informants' reliability that are legally sufficient to support a finding of probable cause. Davis v. State, supra.
We have also analyzed the sufficiency of this affidavit in light of the "totality of circumstances test" recently announced by the Supreme Court of the United States in Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). That decision was issued after the briefs were filed in this case. The Court there held:
For all these reasons, we conclude that it is wiser to abandon the `two-pronged test' established by our decisions in Aguilar and Spinelli. In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations... . The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to insure that the magistrate had a `substantial basis for ... conclud[ing]' that probable cause existed.
At ___, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.
The "totality of circumstances test" does not discard entirely the necessity for determining the veracity or reliability of the informants and their information; on the contrary, such inquiry is still an integral part of the totality of the circumstances that must be considered, although it is no longer necessarily conclusive. We note that the affidavit here did not recite facts showing that any of the officer's investigative activities and observations substantially corroborated the information received from the informants, as did the affidavit in Illinois v. Gates, supra, and other decisions cited therein. Lacking this independent corroboration, the affidavit in this case is equally insufficient under the "totality" test. Accordingly, it was error for the *633 court to deny defendant's motions to suppress.[1]

WITHDRAWAL OF PLEA
On November 1, 1982, defendant appeared in court with the public defender and entered a plea of nolo contendere to all pending charges. Upon questioning by the court, in accordance with Rule 3.172, Florida Rules of Criminal Procedure, defendant indicated, usually by a "yes" or "no" answer, that he understood the maximum possible sentence to be one hundred years; he was satisfied with his counsel; he was not "forced, threatened or coerced" to so plead; and he understood he was giving up his rights to have the state prove the charges beyond a reasonable doubt, to a trial by jury, to confront and cross-examine witnesses testifying against him, to call witnesses in his behalf, and to appeal his conviction except on the matters expressly reserved. Defendant was also asked and answered the following:
Q. Are you under the influence of any controlled substances or narcotics or alcohol or anything at this time, or have you been for the last 24 hours?
A. No, sir.
Q. Have you understood fully everything that's been said during the course of these proceedings this morning?
A. Yes, sir.
Thereupon, the court accepted the plea, but withheld adjudication of guilt and sentencing until December 6, 1982.
One week later, defendant wrote a letter to the trial court requesting, in effect, that the court set aside the plea bargaining agreement and permit defendant to withdraw his nolo plea. He contended, among other things, that he was under the influence of drugs at the time of the hearing and had been under such influence for many hours before the hearing, that his appointed counsel had yelled at him to plead nolo, and that he agreed to the plea bargain on the morning of the hearing so that his appointed counsel "would not yell at me." A week later, his public defender filed a formal motion to withdraw as counsel on grounds defendant claimed his plea had been coerced by such counsel.
At a hearing on these matters, held November 18, 1982, the public defender was allowed to withdraw, and a private practicing attorney was appointed by the court to represent defendant. This newly appointed attorney was unable to participate effectively in the hearing to set aside defendant's plea because, in his words, he was "obviously not prepared to argue the facts of the case" and had no prior contact with defendant. Nevertheless, the trial judge proceeded to interrogate the defendant, at times over the objection of his newly appointed counsel, concerning the basis of his letter request to set aside his plea (no formal motion had been filed by the public defender). The defendant was sworn as a witness and explained in response to questions from both the court and the prosecutor that he met with his appointed public defender on Sunday, the day before the hearing; that counsel kept saying "plea bargain," but defendant insisted, "I want them to take me to court and prove that I did something. I didn't do anything"; that he had taken eight phenobarbitol tablets from Sunday afternoon to Monday morning an hour before the plea hearing, and this drug made him feel "fantastic" and so relaxed that he felt he was "floating"; that he finally agreed that morning to permit his counsel to plea bargain; that prior to the hearing he and the public defender had reviewed all of the questions to be asked by the court and rehearsed the "right" answers to be given by defendant; and that as he stood before the court that morning he did not understand everything that took place (in spite of his answer to the contrary that day) because his mind was not "on what I was supposed to be doing," so he just answered "the right way."
*634 Defendant had been seeing a psychologist for individual therapy since July of that year. Defendant had that doctor present at the hearing that morning. The doctor was called by the state and testified, in response to questions by the prosecutor and the court, that the defendant came to see him immediately after the plea hearing and said, with no anxiety, "I've plea bargained and I'm going to do a year in jail"; that this was a marked change from his usual behavior because all along defendant had adamantly proclaimed his innocence; that the defendant said he had been taking phenobarbitol at the time; that defendant appeared to be sedated and his behavior differed perceptively from normal in that at prior sessions defendant was usually "uptight," "anxious," "hyper," and "verbose," but that morning was sedate and quiet. The doctor said he did not see defendant actually take any phenobarbitol tablets and testified, when asked by the court:
Judge: Well, you might be sedated and you might be drowsy, but would that impair his ability to understand what was being asked of him?
A. It is hard to say. It is hard to say.
Immediately after the above answer by the doctor, the court summarily denied the motion to withdraw without hearing argument from anyone, apparently concluding that the testimony of defendant's doctor had not carried the burden of establishing sufficient mental impairment to warrant setting aside the plea. No other evidence was presented by the state to dispute the testimony of the doctor or defendant.
Although the state had announced its intention to call defendant's court-appointed public defender to testify on this matter, he was not called, and the record is silent on whether counsel could dispute or confirm the defendant's contentions. Defendant's newly appointed counsel apparently had not discussed this matter with the public defender and neither participated in the questioning nor presented argument in defendant's behalf.
Rule 3.170(f), Florida Rules of Criminal Procedure, provides that "the court may, in its discretion, and shall upon good cause, at any time before a sentence, permit a plea of guilty to be withdrawn" (emphasis supplied). The burden is upon a defendant to establish good cause under the rule, and use of the word "shall" indicates that such a showing entitles the defendant to withdraw a plea as a matter of right. Use of the word "may," however, suggests that the rule also allows, in the discretion of the court, withdrawal of the plea in the interest of justice, upon a lesser showing than good cause. In any event, this rule should be liberally construed in favor of the defendant. Adler v. State, 382 So.2d 1298, 1300 (Fla. 3d DCA 1980). The law inclines toward a trial on the merits; and where it appears that the interests of justice would be served, the defendant should be permitted to withdraw his plea. Morton v. State, 317 So.2d 145, 146 (Fla. 2d DCA 1975). A defendant should be permitted to withdraw a plea "if he files a proper motion and proves that the plea was entered under mental weakness, mistake, surprise, misapprehension, fear, promise, or other circumstances affecting his rights" (emphasis supplied). Baker v. State, 408 So.2d 686, 687 (Fla. 2d DCA 1982).
The uncontroverted testimony before the court below was no doubt sufficient to warrant allowing defendant to withdraw the nolo contendere plea. Defendant's testimony was sufficiently corroborated by the doctor, under questioning by the prosecutor, to establish that defendant was in a state of mental weakness at the time he agreed to plea bargain and announced his plea to the court. The state offered no evidence to dispute this. The defendant promptly raised his objection before the court had adjudicated him guilty under the plea, and it did not appear that the state would have been prejudiced upon trial of the case by permitting withdrawal of the plea just eighteen days after it was entered. Under these circumstances, we believe the court, exercising its Rule 3.170 discretion, could well have permitted defendant to withdraw his plea. But we need *635 not now decide whether the court abused its discretion in denying the withdrawal.
The trial court's handling of this case and the sentence imposed show considerable understanding of the defendant's mental and emotional disabilities. However, it is apparent from the record that defendant did not receive a fair hearing on his request to withdraw his plea. He was compelled to proceed without effective assistance of counsel and was in no position to appreciate his legal burden to obtain the requested relief. He did not actually attempt to present any evidence at the hearing. We conclude that the denial of his motion should be reversed to afford defendant an opportunity for a full hearing on this matter at which he can be effectively represented by counsel. See, Baker v. State, 408 So.2d 686, 687-688 (Fla. 2d DCA 1982).
We AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.
SHIVERS, J., concurs.
MILLS, J., concurs in part and dissents in part.
MILLS, Judge, concurring in part and dissenting in part:
I agree with the majority that the trial court did not err in denying Yesnes' motions to dismiss but it did err in denying his motions to suppress.
I do not agree with the majority that the trial court erred when it refused to allow Yesnes to withdraw his pleas of nolo contendere.
All courts are constantly criticized for delay in meting out justice and for putting the taxpayers to the extra expense of providing indigent criminals with multiple attorneys and multiple hearings. This case is a good example of a trial court trying to avoid both criticisms but to no avail.
Everyone seems preoccupied with providing perfect justice, especially to those charged with crime and also indigent. It is impossible for human beings to provide perfect justice for anyone. Only God can do this.
There are no criminals, there are no crimes, that are identical or the same. Similar, maybe, but no more. Each criminal and each crime requires different treatment. To do more, to do less, results in less than justice.
We should be grateful that this great country of ours has perfected the greatest justice system known to mankind. We should continually strive to better it. But, while doing this, should we ignore the rights of the lawful, should we ignore the rights of victims, should we ignore the rights of taxpayers? No! Should we consider only the rights of criminals who have shown no respect for their victims, for the law of the land, for the constitutions of our country and state? No!
Yesnes was provided with a public defender at the taxpayers' expense. This attorney plea bargained with the State and subsequently appeared with Yesnes before the trial court where Yesnes pled no contest to the charges made against him. Before accepting Yesnes' plea of no contest, the trial court asked Yesnes if he was satisfied with his attorney, if he was forced to plead no contest, if he was under the influence of narcotics and if he understood everything said during the proceedings. Yesnes responded that he was satisfied with his attorney and that he understood everything said at the proceeding. He replied that he was not forced to plead no contest and that he was not under the influence of narcotics. Yet, one week later, he wrote the trial court that his attorney forced him to plead no contest and that at the time he pled he was under the influence of narcotics. Amazing.
Yesnes showed no respect for the children whose bodies he desecrated. He showed no respect for the law. He showed no respect for the trial court.
Nevertheless, the trial court gave Yesnes a hearing on his request for withdrawal of his plea. The trial court granted the public defender's request to withdraw as attorney for Yesnes because Yesnes charged the attorney with forcing him to plead no contest. *636 A private attorney was appointed to represent Yesnes.
Yesnes contended he was under the influence of narcotics at the time he pled, although he told the trial court at that time that he was not. The psychologist who was called to testify and who was counseling Yesnes before he pled no contest stated he could not say that Yesnes was prevented from understanding the plea hearing. His conclusion was based on Yesnes' delayed statement that he was under the influence of narcotics.
The record indicates that when Yesnes pled no contest he was alert enough to correct the trial court's statement regarding his "guilty plea" with the statement, "No contest, sir."
There is no record evidence to support Yesnes' charge that his attorney forced him to plead no contest.
There is no abuse of discretion by the trial court in denying Yesnes' request to change his plea because there is competent substantial evidence that Yesnes was alert, fully understood what was said and knew what he was doing.
It is popular today for criminals to contend that their trial attorneys were ineffective, thus, they should be granted a new trial. Poppycock. In most instances, this is untrue and usually is clearly untrue. Apparently, Yesnes is laying the predicate for future motions.
I would affirm the trial court's denial of Yesnes' motions to dismiss and motion to withdraw plea. I would reverse the trial court's denial of his motion to suppress.
NOTES
[1] In view of this determination, it is not necessary to discuss defendant's contention that the materials seized went beyond the scope authorized by the warrant.