495 So.2d 154 (1986)
Donald William DUFOUR, Appellant,
v.
STATE of Florida, Appellee.
No. 65694.
Supreme Court of Florida.
September 4, 1986.
Rehearing Denied October 27, 1986.
*156 James B. Gibson, Public Defender, and Brynn Newton, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., and W. Brian Bayly, Asst. Atty. Gen., Daytona Beach, for appellee.
ADKINS, Justice.
Donald William Dufour appeals his conviction of first-degree murder and the death sentence imposed. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm both.
The evidence at trial established the following scenario. State witness Stacey Sigler, appellant's former girlfriend, testified that on the evening of September 4, 1982, the date of the murder, appellant announced his intention to find a homosexual, rob and kill him. He then requested that she drop him off at a nearby bar and await his call. About one hour later, appellant called Sigler and asked her to meet him at his brother's home. Upon her arrival, appellant was going through the trunk of a car she did not recognize, and wearing new jewelry. Both the car and the jewelry belonged to the victim.
Appellant had met the victim in the bar and driven with him to a nearby orange grove. There, appellant robbed the victim and shot him in the head and, from very close range, through the back. Telling Sigler that he had killed a man and left him in an orange grove, he abandoned the victim's car with her help.
According to witness Robert Taylor, a close associate of appellant's, appellant said that he had shot a homosexual from Tennessee in an orange grove with a .25 automatic and taken his car. Taylor, who testified that he had purchased from appellant a piece of the stolen jewelry, helped appellant disassemble a .25 automatic pistol and discard the pieces in a junkyard.
State witness Raymond Ryan, another associate of appellant's, also testified that appellant had told him of the killing, and that appellant had said "anybody hears my voice or sees my face has got to die." Noting appellant's possession of the jewelry, Ryan asked him what he had paid for it. Appellant responded "You couldn't afford it. It cost somebody a life." Ryan further testified that he had seen appellant and Taylor dismantle a .25 caliber pistol.
Henry Miller, the final key state's witness, testified as to information acquired from appellant while an inmate in an isolation cell next to appellant's. In return for immunity from several armed robbery charges, Miller testified that appellant had *157 told him of the murder in some detail, and that appellant had attempted to procure through him witness Stacey Sigler's death for $5,000.
At the penalty phase of the trial, Taylor testified over objection to the details of a Mississippi murder for which appellant had been convicted of first-degree murder. The jurors unanimously recommended death and appellant was so sentenced.
Appellant urges that reversal of his conviction is warranted upon a number of grounds. First, he contends that the trial court erred in denying his motion to suppress evidence seized during a search of his residence. The insufficiency of the affidavit supporting the warrant, it is argued, renders the warrant invalid and the fruits of the search inadmissible. An examination of the affidavit, however, leaves little doubt that it amply established the necessary probable cause.
The affidavit, sworn to by an Orange County detective, first indicated that the victim had been murdered with a .25 caliber pistol, and identified certain unique jewelry last seen on the victim's person. The heart of the affidavit centered upon the statement of Raymond Ryan. Ryan stated that appellant informed him that he had killed a person for his gold jewelry, and that he (Ryan) had seen some of this jewelry in the possession of appellant and Robert Taylor. Finally, Ryan indicated that appellant and Taylor "were very close friends and frequently visit each other's apartment, and have committed other crimes together," and that he had seen in Taylor's possession a .25 caliber automatic.
Appellant initially argues that the weaknesses rendering the affidavits insufficient in Yesnes v. State, 440 So.2d 628 (Fla. 1st DCA 1983), and King v. State, 410 So.2d 586 (Fla. 2d DCA 1982), similarly inflict the instant affidavit. We disagree.
A crucial factor distinguishes the affidavits in Yesnes and King from the instant affidavit. In the first two cases, the affidavits were based on the substantially uncorroborated statements of shadowy and unknown confidential informants. The Yesnes court, for instance, applying the "totality of the circumstances" test set forth in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), found the affadavit "totally lacking in facts sufficient to show the requisite veracity or reliability of the unnamed informants and the information supplied by them." 440 So.2d at 632. Here, the disclosure of the source of the information and the specificity of the facts disclosed, combined with the detective's independent investigation tending to corroborate Ryan's statements, manifestly established the probable cause justifying the search.
The weakness present in King is likewise absent in the instant affidavit. In that case, the confidential informant never indicated when he saw the illegal act  the defendant's possession of marijuana. The affidavit was therefore insufficient because the offense could have occurred years before; the magistrate was unable to determine any time limitations from the information before him.
The instant affidavit, however, dated October 11, 1982, indicated that the victim's body had been discovered on September 6, 1982. Additionally, Ryan alleged that he had seen Taylor in possession of the murder weapon within the past ten days. These factors amply served to provide for the magistrate a time frame in which to conclude that the jewelry and the handgun could well be contained in appellant's apartment.
Appellant lodges his final attack on the affidavit under the authority of Blue v. State, 441 So.2d 165 (Fla. 3d DCA 1983). Such an argument is without merit. Contrary to appellant's assertions, the affidavit under these circumstances required no explicit statement that the jewelry and gun could be located in appellant's apartment. Because the items could reasonably be presumed to be located either on the appellant's person or in his home, it was not arbitrary for the magistrate to make that determination. Bastida v. Henderson, 487 F.2d 860 *158 (5th Cir.1973); State v. Malone, 288 So.2d 549 (Fla. 1st DCA 1974).
Appellant next argues that the testimony of Richard Miller, a fellow inmate during his incarceration after the murder, should have been suppressed under the authority of United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). Having reviewed Henry and the Court's more recent pronouncement in Maine v. Moulton, ___ U.S. ___, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), we find no such impermissible interference with appellant's sixth amendment right to counsel in this case, and reject this claim.
In Henry, the Court found an informant's testimony inadmissible when the informant, the defendant's cellmate, was approached by the police and instructed to "be alert" to any statement the defendant might make. The informant thereby became a government agent for the illicit purpose of obtaining incriminating statements from the accused in the absence of counsel. The Court, in applying Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and finding that Henry's right to counsel had been violated, essentially affirmed that the government would not be permitted to obtain by trickery or stealth incriminating evidence it could not have legitimately obtained. In analyzing whether the government had impermissibly "deliberately elicited" the information from the defendant through its informant, 447 U.S. at 272, 100 S.Ct. at 2187, the Court focused upon certain elements of the government/informant relationship: the government's initial contacting of the witness, known to have a history as a paid informant, its subsequent instructions to "be alert" to the defendant's statements, and the "contingent fee" arrangement providing for the witnesses' compensation. These elements indicated an orchestrated plan reflective of the government's intention to set the stage for an interference with Henry's right to the assistance of counsel.
In the subsequent Moulton decision, the court found that the state had "knowingly circumvented Moulton's right to have counsel present at a confrontation between Moulton and a police agent," 106 S.Ct. at 490, and so violated the defendant's sixth amendment rights. In spite of the opinion's fairly broad language equating the state's "knowing exploitation ... of an opportunity to confront the accused without counsel being present" with its "intentional creation of such an opportunity," 106 S.Ct. at 487, the Court found such "knowing exploitation" on fairly outrageous facts.
First, the individual acting as a government agent, Colson, was no mere cellmate of Moulton's. Rather, he was a codefendant, facing trial on the same charges as Moulton, and apparently aligned with Moulton against the state in the adversarial process. Upon reaching an agreement with the authorities, Colson used this position to uncover incriminating evidence which legitimately lay beyond the authorities' reach.
Secondly, although Colson originally approached the police, it was the latter who conceived and set into motion, albeit with Colson's consent, the flagrant violations of Moulton's rights which followed. The authorities first placed a recording device on Colson's telephone, with instructions to activate the device upon receiving either anonymous phone threats or calls from Moulton. By this means, three conversations were recorded between Colson and Moulton. In the third conversation, Moulton asked Colson to set aside an entire day so that the two of them could meet and plan their defense.
The authorities then obtained Colson's consent to be equipped with a body wire transmitter in order to monitor and record the meeting. Although the police acknowledged at trial their awareness that the two were meeting to discuss the charges on which they both had been indicted, Colson was instructed "not to attempt to question [Moulton], just be himself in the conversation." 106 S.Ct. at 481. At the meeting, the two discussed and planned their alibis, and so necessarily detailed the commission of various crimes. Through joking and *159 pretensions of forgetfulness, Colson induced Moulton to repeatedly incriminate himself. Upon the admission into evidence of several portions of this tape, Moulson was convicted.
We cannot find that either Henry or Moulton compel a finding that appellant's sixth amendment rights have been violated in this case. A review of the facts discloses no "stratagem deliberately designed to elicit an incriminating statement." Miller v. State, 415 So.2d 1262, 1263 (Fla. 1982), cert. denied, 459 U.S. 1158, 103 S.Ct. 802, 74 L.Ed.2d 1005 (1983), quoting Malone v. State, 390 So.2d 338, 339 (Fla. 1980), cert. denied, 450 U.S. 1034, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981). First, Miller approached the authorities on his own initiative, indicating scheming on his part rather than the government's. Bottoson v. State, 443 So.2d 962 (Fla. 1983), cert. denied, 469 U.S. 873, 105 S.Ct. 223, 83 L.Ed.2d 153 (1984); Barfield v. State, 402 So.2d 377 (Fla. 1981).
We affirm the vitality of this factor in a sixth amendment right to counsel analysis, noting that the Moulton Court's statement that "the identity of the party who instigated the meeting at which the Government obtained incriminating statements was not decisive or even important to our decisions in Massiah or Henry," 106 S.Ct. at 486-87, refers to the initiation of contact between the accused and the agent, rather than the agent and the government. In Henry, in fact, a crucial element of the state's intentional creation of a situation likely to induce Henry to make incriminating statements involved its initial contacting of the agent and its subsequent instructions to "be alert" to Henry's statements.
Finally, we cannot find the "knowing exploitation" forbidden by Moulton in the absence of more action on the state's behalf tending to indicate a deliberate elicitation of incriminating information. After approaching authorities with information of appellant's planned escape attempt, Miller was neither encouraged nor discouraged from obtaining further information. As we held in Johnson v. State, 438 So.2d 774, 776 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984), "Henry and Malone do not impose on the police an affirmative duty to tell an informer to stop talking and not approach them again nor do they require that informers be segregated from the rest of a jail's population." We find no violation of appellant's right to counsel.
In his third argument on appeal, appellant contends that the trial court erred in denying several motions for mistrial. Principally, appellant contends that the prosecutor's mention in his opening argument of Miller's anticipated testimony concerning appellant's escape attempt introduced to the jury irrelevant collateral crime evidence. In light of our holding above as to the admissibility of Miller's testimony, we disagree. The testimony was relevant and admissible as defining the relationship between the state's witness and appellant. Yesbick v. State, 408 So.2d 1083 (Fla. 4th DCA), review denied, 417 So.2d 331 (Fla. 1982). Appellant's several other motions for mistrial similarly lack merit.
Appellant next contends that the trial court abused its discretion in limiting the cross-examination of state witness Robert Taylor. Taylor, appellant's co-defendant in a Mississippi murder prosecution, awaited trial on murder charges in Georgia at the time he testified in appellant's trial. Prior to trial, the state filed several motions in limine seeking to limit the scope of cross-examination of Taylor. The trial court granted two of these motions, prohibiting the defense from asking Taylor any questions in response to which he could be expected to exercise his right against self-incrimination, and from mentioning Taylor's confession to an Orange County sheriff of a number of crimes.
We cannot find that the trial court abused its discretion in either respect. In granting the first motion, the court did not prohibit the defense from impeaching the witness regarding the murder charge. Rather, it prohibited the defense from delving *160 into the facts of a pending case. The jury learned of the charges, and that Taylor hoped to have the state attorney intervene on his behalf at the trial. Because the essence of the witnesses' bias was established through direct and cross-examination, we can find no error in the trial court's "preventing the cross-examination from ... becoming, under the guise of impeachment, a general attack on the character of the witness." Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982).
Similarly, we find the exclusion of the Orange County "confessions" proper. The state's uncontradicted motion established that Taylor "confessed" to a series of unsolved crimes on which the state had insufficient evidence to prosecute, thus clearing the police files in return for a promise not to forward the cases to the state attorney for prosecution. Since the jury was adequately exposed to Taylor's extensive felony record and his tendency to bargain with the state, no need existed for further cross-examination, especially upon such a flimsy foundation.
Appellant next argues that the trial court erred in allowing witness Detective Hansen to read into evidence portions of a statement made by Taylor in 1982, under section 90.801(2)(b), Florida Statutes (1983), as prior consistent testimony tending to rebut implications of improper motive or recent fabrication. While noting that a witnesses' testimony may not ordinarily be bolstered with corroboration with his own prior consistent statements, Van Gallon v. State, 50 So.2d 882 (Fla. 1951); McElveen v. State, 415 So.2d 746 (Fla. 1st DCA 1982), we find that the statements in this case fall within the rule's narrowly drafted terms and were properly admitted. First, through its references in cross-examination to Taylor's negotiations with the state attorney's office involving armed robbery charges, the defense adequately impeached the witnesses' credibility, raising the specters of both improper motive and recent fabrication. Because, too, the statement in question was made at the time of Taylor's arrest in October 1982, prior to the robbery plea negotiations, Wilson v. State, 434 So.2d 59 (Fla. 1st DCA 1983), and the actual filing of the Georgia murder charge, the trial court could properly have found that the statement was made prior to the existence of Taylor's motive to fabricate.
In his sixth point on appeal, appellant argues that a mistrial was required after certain comments in the prosecutor's closing argument impermissibly directed the jurors' attention to appellant's failure to take the stand. Fla.R.Crim.P. 3.250. An examination of the statements in question and the context from which they arose, however, leads us to conclude that the statements directed the jury's attention to defense counsel and the evidence presented rather than to appellant's failure to testify. First, in the context of reviewing the bargain that witness Miller had struck with the state in exchange for his testimony, the prosecutor said:
Nobody has come here and said, Mr. Miller's testimony was wrong, or incorrect, or that that was not the deal he was offered.
Far from commenting on appellant's failure to testify, we find that an examination of the statement in context makes clear that "Mr. Miller's testimony" refers only to his testimony on his negotiations with law enforcement authorities. As such, the statement merely permissibly commented on the evidence. United States v. Fogg, 652 F.2d 551 (5th Cir.1981), cert. denied, 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982); State v. Bolton, 383 So.2d 924 (Fla. 2d DCA 1980).
Second, we find that the prosecutor's statement to the jury that "[Y]ou haven't, number one, heard any evidence that Donald Dufour had any legal papers in the cell with him" merely rebutted the statement of the defense in its closing argument hinting that witness Miller had access to and could have based his testimony upon appellant's "legal papers." This comment merely referred to the lack of any evidence on the question, White v. State, 377 So.2d 1149 (Fla. 1979), and fell into the category of an "invited response" by the *161 preceding argument of defense counsel concerning the same subject. State v. Mathis, 278 So.2d 280 (Fla. 1973). The trial court thus acted properly in denying these motions for mistrial.
Appellant next argues that the trial court committed reversible error in finding appellant's absence at a pretrial motions hearing voluntary and conducting it in his absence. Although appellant would liken the facts of the instant case to the absence found reversible in Francis v. State, 413 So.2d 1175 (Fla. 1982), we agree with the state that appellant voluntarily absented himself from the proceeding within the terms of Florida Rule of Criminal Procedure 3.180(b) by embarking on a "hunger strike" culminating in his hospitalization during the hearing. The trial court acted well within its discretion in so ruling.
Next, appellant challenges the trial court's denial of his motions for a continuance. Finding that the requisite showing of a palpable abuse of the court's discretion in so ruling has not been made, Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); Magill v. State, 386 So.2d 1188 (Fla. 1980), cert. denied, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981), we reject this claim.
In his ninth point on appeal, appellant contends that the trial court erred in declining to impose sanctions for an alleged violation by the prosecution of the provisions of Florida Rule of Criminal Procedure 3.220(b)(3). We must first examine the rule's terms to ascertain whether or not any violation occurred below, and, if so, whether any prejudice accrued therefrom to the appellant. James v. State, 453 So.2d 786, 790 (Fla. 1984), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984).
Rule 3.220 sets forth the respective rights and obligations of the parties concerning discovery in the criminal context. Section (b)(3) of the rule indicates that if the defense has chosen to demand of the state a list of the latter's witnesses, it must, within seven days of the receipt of that list, furnish to the state a list of its expected witnesses. At that point, the rule limits the prosecution's otherwise plenary power to subpoena witnesses and take ex parte testimony as to any violation of the criminal law within its jurisdiction. Able Builders Sanitation Co. v. State, 368 So.2d 1340 (Fla. 3d DCA), dismissed, 373 So.2d 461 (1979); § 27.04, Fla. Stat. (1985). After receiving the defense witness list, the prosecutor may not subpoena any individual on that list without notifying defense counsel and allowing them to attend the interview and examine the witness.
The alleged violation below involved witness Stacey Sigler. Sigler was originally listed on the state's witness list provided to the defense under rule 3.220(a)(1)(i). The defense merely duplicated this list and submitted it as its own, thereby attempting to force the requirement of notice and the right to attend any meeting between Sigler and the prosecution. Relying on dictum in State v. Barreiro, 432 So.2d 138, 140 n. 5 (Fla. 3d DCA 1983), review denied, 441 So.2d 631 (1983), which indicated that "[i]f defense counsel wants to protect against the state's ex parte examination of a witness, he can do so by furnishing the witness's name on his list of defense witnesses," the defense attempted to gain, and was denied, admission to an interview between Sigler and the state's attorney. The defense subsequently moved for dismissal of the indictment or the exclusion of Sigler's testimony as sanctions for the state's behavior in excluding the defense from the interview.
Because we find that no violation of the discovery rules took place below, we approve the trial court's refusal to impose any sanctions. Appellant's construction of the discovery provisions is overbroad and would cut the rule loose from its logical moorings. It is not enough to merely duplicate the list of state's witnesses and thus transform Sigler into a witness "whom the defense counsel expects to call as [a witness] at the trial or hearing." Fla.R. Crim.P. 3.220(b)(3).
*162 No indication exists that defense counsel, in good faith, intended to call Sigler as a witness. In fact, because Sigler proclaimed ignorance of the crime until the meeting complained of, she apparently lacked the requisite personal knowledge required of a witness. Application of the rule's provisions to the instant facts, as urged by appellant, would frustrate the purpose underlying the rule. When properly applied, rule 3.220(b)(3) serves the protective purpose of preventing the state from driving an unfair wedge between defense counsel and its key witnesses, through ex parte examination, during sensitive pretrial stages. It is not intended to inhibit the prosecution's power to prepare its case by disallowing all ex parte communication with its witnesses.
We disapprove of tactics such as those employed by the defense below, because the inclusion of an unwarranted abundance of names on the defense witness list can ultimately only dilute the rule's protective power. The defense is certainly not prohibited from listing as its own those witnesses already listed by the state, but it must do so conscientiously, naming only those it actually expects to call. Otherwise, by attempting to use the rule as a sword, rather than the shield it is intended to be, the defense risks losing any protection which that shield might have offered.
The court additionally rejected the application of rule 3.220(b)(3) because it found, under the circumstances, that Sigler approached the prosecutor voluntarily. In spite of the initial subpoena, the court found that Sigler had approached the authorities, on the advice of her attorney, in order to negotiate for immunity. Noting that the interview took place two days after the subpoena date, the court found her approach voluntary and the rule inapplicable.
Because we cannot disagree that Sigler was improperly listed as a defense witness, and that her testimony was given voluntarily, we approve of the trial court's refusal to impose sanctions. Mobley v. State, 327 So.2d 900 (Fla. 3d DCA 1976), cert. denied, 341 So.2d 292 (Fla. 1976).
Appellant next argues that the trial court's forcing him to wear leg shackles during the trial led to undue jury prejudice and violated his fundamental right to a fair trial by vitiating his right to a presumption of innocence. Appellant cites Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), for the principle that forcing a defendant to face trial in prison garb impermissibly risks an impairment of his presumption of innocence. In Estelle, however, the Court cited Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), in which the Court upheld the practice of shackling the defendant when necessary to control a contumacious defendant, and noted that in some circumstances physical restraints may further an essential state policy. 425 U.S. at 505, 96 S.Ct. at 1693.
The court below found the shackles necessary in view of appellant's planned escape attempt from the Orange County jail and his conviction of two murders in Mississippi and subsequent placement on death row. The court explained that while "if he tried to escape he would be unsuccessful ... someone may be hurt. I don't want that to occur."
The court did attempt to minimize any prejudice accruing to appellant by granting defense counsel's request to place a table in front of the defense table in order to hide the leg shackles. Under these circumstances, and from the lofty stance of appellate review, we will not second-guess the considered decision of the trial judge. We therefore reject appellant's claim.
In his eleventh point on appeal, appellant contends that the trial court erred in denying appellant's motion for mistrial after the jury learned that one juror had received a "strange" phone call and been dismissed. The caller dialed the number, asked if "Mr. Girdner", the juror's husband  not the juror  was in, and hung up. Although the phone call could not be linked to the trial in any sense, the trial court, pursuant to defense *163 counsel's urgings, in an "abundance of caution" dismissed the juror from service immediately prior to closing arguments.
Contrary to the court's instruction, the dismissed juror mentioned the phone call to other members of the jury. The court then called the jury in, explained the circumstances surrounding the call and the juror's dismissal, and assured the jury that the call had no connection with the trial and that their phone numbers were not made public. Finally, the court determined that the jurors had no reservations about their further service.
Determinations of whether substantial justice requires a mistrial and related questions involving juror conduct are both lodged within the sound discretion of the trial court. Doyle v. State, 460 So.2d 353 (Fla. 1984). In light of the tenuous connection between the trial and the call, the court's instruction to the jury was sufficient to cure any taint which may have resulted from the jurors' knowledge of the call. Clark v. State, 443 So.2d 973 (Fla. 1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2400, 81 L.Ed.2d 356 (1984); State v. Tresvant, 359 So.2d 524 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 375 (1979). We therefore reject appellant's contention.
We now reach appellant's claims as to error in the sentencing portion of the proceeding. First, appellant argues that the trial court erred in denying his proposed special instructions on the jury's sentencing recommendation. We cannot find the court's refusal to deviate from the standard jury instructions improper, as the court had no duty to instruct the jury that a life sentence could be imposed even in the absence of any mitigating circumstances. In fact, we recently rejected such a contention in Kennedy v. State, 455 So.2d 351 (Fla. 1984), cert. denied, 469 U.S. 1197, 105 S.Ct. 981, 83 L.Ed.2d 983 (1985).
Next, appellant argues that the trial court erred in admitting into evidence during the penalty phase extensive details of an earlier murder he had committed in Mississippi. While appellant acknowledges that details of prior felonies involving the use or threat of violence to the person are properly admitted in the penalty phase of a capital trial, and that evidence inadmissible in the guilt phase may be relevant and admissible in evaluating aggravating and mitigating circumstances, Perri v. State, 441 So.2d 606 (Fla. 1983); Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976), he contends that the trial court here "went too far." We find this argument meritless. Justus v. State, 438 So.2d 358 (Fla. 1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1332, 79 L.Ed.2d 726 (1984); Delap v. State, 440 So.2d 1242 (Fla. 1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984).
In his fourteenth point on appeal, appellant argues that the trial court erred in denying his motion to strike death as a possible penalty because the charging indictment had failed to allege the aggravating factors possibly subjecting him to the death penalty. We reject this argument once again. Hitchcock v. State, 413 So.2d 741 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982); Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982).
Appellant next argues that the trial court erred in finding that two of the aggravating factors found were proven beyond a reasonable doubt. First, we agree that the court erroneously found that the murder had been committed for the purpose of avoiding a lawful arrest, section 921.141(5)(e), Florida Statutes (1981), since the evidence failed to establish the requisite proof of an intent to avoid arrest or detection through the killing. No showing was made that the dominant or sole motive for the murder was the elimination of witnesses. Bates v. State, 465 So.2d 490 (Fla. 1985); Riley v. State, 366 So.2d 19 (Fla. 1978), cert. denied, 459 U.S. 981, 103 S.Ct. 317, 74 L.Ed.2d 294 (1982).
*164 We affirm the trial court's finding, however, that appellant's announcement of his intention to commit a murder and the subsequent execution-style shooting sufficiently established a cold, calculated and premeditated murder with no pretense of any moral or legal justification. § 921.141(5)(i), Fla. Stat. (1981). Because the court below found three proper aggravating and no mitigating circumstances, the result it reached, in spite of the error as to one factor, was correct and the death penalty properly imposed. Harmon v. State, 438 So.2d 369 (Fla. 1983); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
Finally, appellant raises a number of claims attacking the constitutionality of Florida's capital sentencing statute which he acknowledges this Court has rejected in the past. Ferguson v. State, 417 So.2d 639 (Fla. 1982); Lewis v. State, 398 So.2d 432 (Fla. 1981). We do so again.
Upon our independent review of the evidence as required by Florida Rule of Appellate Procedure 9.140(f), we have found no insufficiency thereof. Finding no reversible error in either the guilt or penalty phases of appellant's trial, we affirm both the conviction and sentence imposed.
It is so ordered.
McDONALD, C.J., and BOYD, EHRLICH and SHAW, JJ., concur.
OVERTON, J., concurs in result only in the conviction, and concurs with the sentence.