GRIFFIN, Judge.
The state has appealed an order suppressing evidence obtained during the execution of a search warrant at a private residence. The basis of the lower court’s ruling was that the affidavit on which the search warrant was based lacked facts showing the veracity or reliability of the informant whose information was relied upon in procuring the warrant. We reverse.
On November 6,1992, Judge Michael Cyc-maniek issued a search warrant for the residence located at 221 Fairlane Avenue, Orlando. The subsequent search of that address produced approximately 81 grams of cocaine, a volume of cannabis, drug paraphernalia, and U.S. currency in the amount of $876.00. During the search, William Rivera and Elio Ojeda [“Appellees”] were arrested and were each charged with one count of trafficking in cocaine[1] and one count of possession of more than twenty grams of Cannabis[2]. Appellees moved to suppress the evidence obtained through the search.
At the hearing on the motion to suppress, Narcotics Agent Irwin, of the Orange County Sheriffs Department, testified that while conducting surveillance at a location known as Lancaster Market, he noticed that Eméri-to Naranjo often left the Market as a passenger in various persons’ automobiles. Over a two week period, Officer Irwin followed Nar-anjo several times and each time the car in which he was a passenger travelled to 221 Fairlane Avenue. Once at 221 Fairlane, Naranjo would go inside for a short period. Naranjo would then return to the car, leave 221 Fairlane and be returned to Lancaster Market. Shortly thereafter, a confidential informant introduced Officer Irwin to Naran-jo, and Naranjo sold the officer fifty dollars worth of heroin, although Irwin did not know where or how Naranjo came into possession of the heroin.
Agent Irwin testified that shortly thereafter he and Agent Duke observed two suspects, Figueroa and Quijano, loitering near Lancaster Market. He had never seen Figueroa and Quijano before. He observed Figueroa paging someone from a pay phone. Figueroa then waited for the return call and answered when he was called back. Figueroa and Quijano then walked across the street to a drug store and Agent Irwin followed them. Quijano waited outside the drug store while Figueroa went inside and purchased ten syringes. Figueroa and Quijano then went to 221 Fairlane. They were inside the *304 residence at 221 Fairlane for approximately fifteen minutes; the two then exited the apartment and headed back toward Lancaster Market.
Agent Irwin and Agent Duke stopped the suspects and identified themselves. Figueroa threw a cigarette package containing cocaine on the ground and fled. Quijano threw his bicycle at Officer Irwin. The officers pursued the two subjects, and, during pursuit, Quijano threw down a baggie of cocaine. Quijano and Figueroa were captured and arrested.
Officer Irwin testified that while he was writing up the charging documents, Quijano spontaneously stated that he went to the house at 221 Fairlane “every Friday” to buy cocaine. It had been Figueroa’s idea to go there that day to buy cocaine. Since Quijano was already there with Figueroa, he decided to go ahead and buy that day. Officer Irwin testified that he had suspected there was drug activity at 221 Fairlane, but that he could not confirm his suspicions until Quijano made this statement.
The affidavit filed by Agent Irwin in support of the search warrant recounts roughly the same information adduced at the hearing. The affidavit contains no facts to support Quijano’s veracity or reliability as a source of truthful information about activities at 221 Fairlane other than the facts previously developed in the ongoing investigation at Lancaster Market. The issue thus presented is whether the statements of Quijano in conjunction with the previous observations by Sheriffs agents provided the requisite probable cause to issue a search warrant. Appel-lees contend that since law enforcement lacked probable cause before the arrest of Quijano, and since nothing was done to verify Quijano’s veracity as an informant, the combination of the two sets of facts cannot give rise to probable cause. In granting the motion to suppress, the lower court ruled that because the affidavit faded to set forth any facts to show Quijano’s veracity or reliability, it cannot be considered as part of the “totality of the circumstances” to establish probable cause.[3] This matter was well presented by counsel below and carefully considered by the lower court; nevertheless the issue is purely one of law and we are compelled to disagree with the lower court.
The only case cited by the lower court for its conclusion that Quijano’s statement could not be considered because of the failure to determine Quijano’s veracity was Roper v. State, 588 So.2d 330 (Fla. 5th DCA 1991). Roper is relevant to the extent that the informant involved is not an ordinary citizen, mere eyewitness, disinterested bystander or victim whose statements are entitled to a presumption of veracity. 588 So.2d at 332. However, the two cases are dissimilar in one material respect. In Roper, there were no other facts to support the credibility of the informant’s statements. In the present case, there are. Indeed, in Roper the court noted:
Under Gates, the sufficiency of an affidavit for a search warrant must be determined based upon the totality of the circumstances, and this test does not make irrelevant the informant’s veracity and reliability:
The “totality of the circumstances test” does not discard entirely the necessity for determining the veracity or reliability of the informants and their information; on the contrary, such an inquiry is still an integral part of the totality of the circumstances that must be considered, although it is no longer necessarily conclusive.
Yesnes v. State, 440 So.2d 628 (Fla. 1st DCA 1983). “An informant’s ‘veracity,’ ‘reliability,’ and ‘basis of knowledge’ are all highly relevant in determining the value of an informant’s report.” Gates, 462 U.S. at 231, 103 S.Ct. at 2328. “[These factors] should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is probable ‘cause’ to believe that contraband or evidence is located in a particular place.” Id.
Here the investigative work done previously by law enforcement provided substantial circumstances from which the issuing magistrate could conclude that it was probable the *305 informant was telling the truth. Blue v. State, 441 So.2d 165, 167 (Fla. 3d DCA 1983).
Although neither party has cited any case closely paralleling the issue presented here, we can find nothing to suggest that information already in the hands of police will not provide the requisite verification that the informant is telling the truth. In fact, this case is most like State v. Novak, 502 So.2d 990 (Fla. 3d DCA), review denied, 511 So.2d 299 (Fla.1987), except that the difference in the quality of the facts dictates a different result. In Novak, the police had the statement of an identified informant who claimed to have received drugs from the defendant on seventy-five occasions; however, no independent indicia of the informant’s reliability existed. The state contended that veracity was presumed because the witness was like a “citizen informant.” The Novak court disagreed, pointing out that a person involved in the commission of crimes is the antithesis of a citizen-informant. In ruling that the required verification was missing, the Novak court mentioned that the only additional fact relied upon was law enforcement’s knowledge that the defendant was a convicted drug dealer. The court found that fact to be “patently insufficient” to corroborate the informant’s information. Here we make the same analysis but find the indicia of Quija-no’s veracity and reliability, based on the facts about 221 Fairlane already developed by Agent Irwin, to be “patently sufficient.” The fruits of the search pursuant to the warrant were therefore improperly suppressed.
REVERSED and REMANDED.
THOMPSON, J., concurs.
DAUKSCH, J., dissents, with opinion.

. § 893.135, Fla.Stat. (1991).

. § 893.13, Fla.Stat. (1991).

. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).