698 So.2d 1299 (1997)
Donnie JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1291.
District Court of Appeal of Florida, Fourth District.
August 27, 1997.
Rehearing Denied October 3, 1997.
*1301 Richard L. Jorandby, Public Defender, and Karen E. Ehrlich, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Barbra Amron Weisberg, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, Judge.
Appellant, Donnie Jackson, appeals his conviction on two counts of battery on a law enforcement officer. We hold that the handcuffing of a defense witness to the witness chair was error, absent a showing that the restraint was necessary to maintain the security of the courtroom. However, under the facts of this case, we find such error to have been harmless.
The charges arose while Jackson was confined at the North Broward Detention Center. According to the state's witnesses, Jackson became irate over the quality of the linens provided to him. The incident escalated from a verbal altercation into a physical struggle during which Jackson struck two deputies.
Although Jackson did not testify at trial, he called one witness, Courtney Copeland, his cell mate on the day of the fight. On the witness stand, Copeland disclosed his six felony convictions. His version of the incident differed from that of the deputies. He said that Jackson did not kick or swing at the officers; in response to an order to put his hands behind his back, Jackson "stood stiff." Copeland said that three deputies threw Jackson to the ground and kicked him.
On cross-examination, the prosecutor asked Copeland to show the jury how Jackson was standing and to "do your hands like that again." During this demonstration, the jury could see that Copeland was handcuffed to the chair on the witness stand. Defense counsel moved for a mistrial on the ground that the jury had seen that Copeland was handcuffed. Because the lawyer was unaware that Copeland had been restrained until the handcuffs became visible during the testimony, he had not objected prior to the witness' taking the stand.
Denying the motion for mistrial, the trial court said that he had instructed the bailiff to handcuff the witness because he was in custody on other charges and was a "six time convicted felon." This order to the bailiff does not appear on the record. Nor does the record reflect any hearing prior to the decision to handcuff Copeland or the implementation of any procedure to minimize the possibility that the jury would see that the witness was handcuffed.
To analyze the propriety of restraining a defense witness, most courts have used the same standards that are applicable to the restraint of a criminal defendant. As a general rule, a defendant in a criminal trial has the right to appear before the jury free from physical restraints, such as shackles or handcuffs. See Illinois v. Allen, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970); Kennedy v. Cardwell, 487 F.2d 101, 104 (6th Cir.1973). The Sixth Amendment guarantee of the right to a fair trial means that an accused
is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.
Taylor v. Kentucky, 436 U.S. 478, 485, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468 (1978). The supreme court has recognized that "certain practices pose such a threat to the `fairness of the factfinding process' that they must be subjected to `close judicial scrutiny.'" Holbrook v. Flynn, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (quoting Estelle v. Williams, 425 U.S. 501, 503-04, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976)).
A criminal defendant's right to be free of physical restraints at trial is not absolute. Because it is an "inherently prejudicial *1302 practice," the use of restraints such as shackles is permissible only where justified "by an essential state interest specific to each trial." Holbrook, 475 U.S. at 568-69, 106 S.Ct. at 1345-46. The supreme court focused on an extreme example of in-court restraints in Allen where a pro se defendant repeatedly disrupted a trial with his outbursts and directed abusive, threatening language at the judge. 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353. After a number of warnings, the judge ordered that the defendant be removed from the courtroom. On appeal, the defendant argued that his removal from the courtroom violated his Sixth Amendment right to confrontation. The supreme court rejected that argument and held that unruly courtroom defendants may be removed from the courtroom or cited for contempt under the appropriate circumstances. The court concluded that because a bound and gagged defendant might so prejudice the defendant in the eyes of the jury, such a confinement should be used only as a last resort in extreme situations.
Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.
Id. at 344, 90 S.Ct. at 1061.
The Florida Supreme Court has recognized that restraining a defendant with shackles in view of the jury adversely impacts an accused's presumption of innocence. See Diaz v. State, 513 So.2d 1045, 1047 (Fla. 1987); Elledge v. State, 408 So.2d 1021, 1022 (Fla.1981). To ensure that the presumption remains viable, courts must guard against practices which "unnecessarily mark the defendant as a dangerous character or suggest that his guilt is a foregone conclusion." Harrell v. Israel, 672 F.2d 632, 635 (7th Cir. 1982). As one court has observed, if a defendant is to be presumed innocent, he must be allowed to display the indicia of innocence. See United States v. Samuel, 431 F.2d 610, 614 (4th Cir.1970).
In deciding whether to physically restrain a defendant and what method to use, the court must balance its obligation to maintain courtroom safety against the risk "that the security measures may impair the defendant's presumption of innocence;" a court may order physical restraints only if it finds them to be necessary to maintain the security of the courtroom. Diaz, 513 So.2d at 1046. The court may not blindly defer to security measures established by the sheriff or other official performing security functions. See McCoy v. State, 503 So.2d 371 (Fla. 5th DCA 1987).
Bello v. State, 547 So.2d 914 (Fla. 1989), established the requirement that a hearing on necessity precede the decision to shackle if a defendant timely objects and requests an inquiry into the necessity for the restraints. See also Finney v. State, 660 So.2d 674, 682-83 (Fla.1995). In Bello, after his conviction of first degree murder, the defendant was shackled during the penalty phase of the trial. The trial court overruled defense counsel's objection without making any inquiry into the necessity for shackling. The supreme court reversed for a new sentencing hearing:
[A]lthough defense counsel objected to the shackling and requested that an inquiry be made, the trial judge refused to do so, deferring to the sheriff's apparent judgment that such restraint was necessary without inquiring into the reasons behind that decision. Further, there is no evidence in the record to support the need for such restraint. Shackling is an "inherently prejudicial practice," [citation omitted], and must not be done absent at least some showing of necessity. Because the trial judge made no inquiry into the necessity for the shackling, the defendant is entitled to a new sentencing proceeding before a jury.
547 So.2d at 918. At the hearing, the judge may consider a variety of sources, including prisoner records, criminal records, witnesses and correctional and law enforcement officials and a defendant may challenge the validity and import of the information provided. See Elledge v. Dugger, 823 F.2d 1439, 1451-52 (11th Cir.), opinion withdrawn, in part, 833 F.2d 250 (1987).
*1303 Florida courts have found a sufficient showing of necessity to support the use of physical restraints on a defendant where there is a history or threat of escape, or a demonstrated propensity for violence. For example, in Dufour v. State, 495 So.2d 154, 162 (Fla.1986), the supreme court affirmed the use of leg shackles during trial where there was evidence of the defendant's plan to escape from jail and the defendant had already been convicted of two murders in Mississippi. In Diaz, the decision to shackle the defendant was supported by the defendant's "prior murder and armed robbery convictions and his record of escapes and prior incidents of violence." 513 So.2d at 1047. The supreme court approved leg shackles on a defendant during trial in Stewart v. State, 549 So.2d 171, 173-74 (Fla.1989), where the defendant had on a previous occasion slipped off his manacles, and was facing escape charges. The use of shackles on the defendant during trial in Blanco v. State, 603 So.2d 132, 133 (Fla. 3d DCA 1992), was justified by the defendant's statements to corrections officers "that he would attempt to escape during the trial and, in the attempt, would batter and inflict bodily injury on persons in the courtroom."
Holding a hearing prior to permitting physical restraints allows the trial court to fashion procedures that minimize the risk of exposure of the restraints to the jury. The supreme court noted with approval in Dufour that the trial court lessened the risk of prejudice by placing a table in front of the defense table to hide the defendant's leg shackles. 495 So.2d at 162. See also Diaz, 513 So.2d at 1047 (trial court suggested that jury's view of shackles be obstructed by defendant "keeping his pants leg pulled down" or by placing a box or briefcase in front of his feet); Blanco, 603 So.2d at 133 (judge kept shackles hidden from jury by having defendant sit between two codefendants or farthest away from jury box).
Other examples of procedures used by trial courts to avoid the prejudicial impact of restraints include: directing that the prisoner be seated at counsel table or at the witness stand before the jury returns to the courtroom, Woods v. Thieret, 5 F.3d 244, 248 (7th Cir.1993); giving a curative instruction advising the jury to disregard the restraints while assessing the testimony, id. at 249; not requiring people in the courtroom to rise when the judge entered, so that the restraints would not be noticed, United States v. Amaro, 816 F.2d 284, 285 (7th Cir.1987); limiting a lawyer's ability to have a witness stand up or move around during testimony, Wilson v. McCarthy, 770 F.2d 1482, 1485 (9th Cir. 1985); and ordering that inmates not be required to raise their hands when giving the oath so as to avoid drawing attention to handcuffs, United States v. Garcia, 625 F.2d 162, 168 (7th Cir.1980).
Most courts use the same analysis to assess the propriety of physical restraints on defense witnesses as they use for criminal defendants themselves. Federal courts "use the same standard of review in both defendant shackling and witness shackling cases." Wilson, 770 F.2d at 1484; see also Harrell, 672 F.2d at 635; Kennedy, 487 F.2d at 105; Williams v. State, 629 P.2d 54 (Alaska 1981); People v. Duran, 16 Cal.3d 282, 127 Cal.Rptr. 618, 621 n. 4, 545 P.2d 1322, 1325 n. 4 (1976); State v. Coursolle, 255 Minn. 384, 97 N.W.2d 472, 476 (1959); Parker v. State, 567 N.E.2d 105 (Ind.Ct.App.1991); State v. Simmons, 26 Wash.App. 917, 614 P.2d 1316 (1980); R.P. Davis, Annotation, Right of Accused to Have His Witnesses Free from Handcuffs, Manacles, Shackles, or the Like, 75 A.L.R.2d 762 (1961). Although a physical restraint on a defense witness may be less prejudicial to the accused because it does not directly diminish the presumption of innocence, it "nevertheless may harm his defense by detracting from" the witness' credibility. Harrell, 672 F.2d at 635. The decision whether to shackle a defense witness is left to the discretion of the trial court, subject to the same considerations that would apply to the physical restraint of a defendant. See id. at 635-36; see also Kennedy, 487 F.2d at 105 n. 5.
As in Bello, the record in this case demonstrates no basis for handcuffing defense witness Copeland. There was no showing that Copeland's felony convictions involved crimes of violence, which may have prompted security concerns. There was no indication that the witness had been a disciplinary *1304 problem in the corrections system. Instead, it appears that the trial court's order was part of a general policy to be followed in all cases for all incarcerated witnesses. In addition, the trial court took no steps to minimize the chance that the jury would see the handcuffs. The defense objection was timely, since it was raised as soon as the attorney became aware of the restraints. For these reasons, it was error to order that Copeland be handcuffed while testifying.
Nevertheless, the error was harmless in this case. The "critical issue in a restraint case is the degree of prejudice caused by the restraints." Elledge, 408 So.2d at 1022-23; McCoy, 503 So.2d at 371. The supreme court has found brief and inadvertent encounters between a shackled accused and one or more jurors insufficient to show prejudice. See Heiney v. State, 447 So.2d 210 (Fla.1984); Neary v. State, 384 So.2d 881 (Fla.1980). There is no reason that a different result should be reached here, where it was a witness who was restrained. Because the incident at issue occurred at a correctional facility, the jury was well aware that Copeland was an inmate. It is not "unreasonable to assume that the jury would naturally expect that when inmates appear in court, either as parties or witnesses, adequate security measures would be taken." Harrell, 672 F.2d at 638; see also Amaro, 816 F.2d at 285-86.
We also find no error in the refusal of the trial court to instruct on attempted battery on a law enforcement officer. See Fla. R.Crim. P. 3.510(a).
AFFIRMED.
GLICKSTEIN and FARMER, JJ., concur.