852 So.2d 904 (2003)
Jerry MILLER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-876.
District Court of Appeal of Florida, Fourth District.
August 13, 2003.
Jerry Miller, Lake City, pro se.
Charles J. Crist, Jr., Attorney General, Tallahassee, and August A. Bonavita, Assistant *905 Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
Jerry Miller appeals the summary denial of his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. In his motion, Miller raised numerous claims. We find one of these claims merits relief.
After a jury trial, Miller was convicted of: (1) attempted second degree murder of a law enforcement officer; (2) two counts of aggravated battery of a law enforcement officer; and (3) simple battery of a law enforcement officer. Miller received life sentences on the aggravated battery counts as a habitual felony offender. The charges arose from an incident that occurred at the Martin Correctional Institution (MCI). Miller allegedly threatened and attacked correctional officers after being removed from a transport vehicle. Miller was being brought back to MCI to face charges for a prior incident with prison guards wherein Miller allegedly bit an officer. Miller was severely injured in the prior altercation and required sixty days hospitalization. At trial for this second incident, Miller argued that he acted in self defense. According to Miller, he was brought back to MCI for an "attitude adjustment," or beating, by prison guards in retaliation for complaints Miller had filed against the guards regarding the force used in the first incident.
Miller's 3.850 motion alleged ineffective assistance of trial counsel in the failure to object to Miller appearing before the jury in restraint devices. Miller appeared before the jury wearing handcuffs, a waist chain, leg irons, and a stun belt, an electronic restraint device. In fact, Miller alleged a witness identified him from the witness stand by pointing out these devices: "[H]e's sitting here wearing that white T-shirt. It looks like he's got a ERD belt on, waist chains, shackles around his legs."
Allowing a defendant to appear before the jury in restraint devices is an inherently prejudicial practice that undermines the presumption of innocence and the right to a fair trial. Generally, a defendant in a criminal trial has the right to appear before the jury free from physical restraints, such as shackles or handcuffs. See Jackson v. State, 698 So.2d 1299 (Fla. 4th DCA 1997); Illinois v. Allen, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). "Because it is an `inherently prejudicial practice,' the use of restraints such as shackles is permissible only where justified `by an essential state interest specific to each trial.' " See Jackson, 698 So.2d at 1301-02 (quoting Holbrook v. Flynn, 475 U.S. 560, 568-69, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986)).
Florida courts have found a sufficient showing of necessity to support the use of physical restraints on a defendant where there is a history or threat of escape, or a demonstrated propensity for violence. See Jackson, 698 So.2d at 1303. Use of shackles to restrain a defendant at trial should rarely be employed as a security device; they should be used only when it is necessary to deter escape or prevent disturbance or potential injury to people in the courtroom. See McCoy v. State, 503 So.2d 371 (Fla. 5th DCA). Nothing in the record indicates that Miller had any courtroom outbursts or otherwise demonstrated a potential escape or injury risk while in court. Miller's prior armed robbery convictions, the most recent in 1985, are not sufficient alone to necessitate the extreme restraint measures that were used here.
If restraint devices were necessary, measures could have been taken to reduce the prejudicial impact. See Dufour v. State, 495 So.2d 154, 162 (Fla.1986) (approving the use of shackles, after a finding *906 of necessity, where a table was used to reduce the visibility of the shackles); Diaz v. State, 513 So.2d 1045, 1047 (Fla.1987) (approving shackling of defendant where trial court suggested that jury's view of shackles be obstructed by defendant "keeping his pants leg pulled down" or by placing a box or briefcase in front of his feet, and defendant refused to hide shackles); see also Jackson, 698 So.2d at 1303 (setting forth some procedures that have been used to reduce the prejudice caused by shackling). An objection, or motion by counsel, would have allowed the court to consider, or fashion, a procedure to reduce the prejudice.
The state's argument that Miller's convictions for crimes of violence justified the use of restraints, therefore negating the need for an evidentiary hearing, is not persuasive. In this case, allowing the charges of violence, for which Miller was on trial, to justify the use of restraint devices is circular reasoning that offends the presumption of innocence, and Miller's right to a fair trial. As a federal court has noted, we must guard against practices which "unnecessarily mark the defendant as a dangerous character or suggest that his guilt is a foregone conclusion." See Harrell v. Israel, 672 F.2d 632, 635 (7th Cir.1982). Miller was entitled to have the judge determine the necessity of restraint devices before trial on objection and request by counsel. See Bello v. State, 547 So.2d 914 (Fla.1989). Further, an objection by counsel to the mode of in-court identification would have preserved the issue for review. Miller's claim of ineffective assistance was facially sufficient. The state's response and record attachments, adopted by the trial court in its summary denial of the 3.850 motion, do not conclusively refute Miller's claim. See Pineda v. State, 805 So.2d 116 (Fla. 4th DCA 2002). Accordingly, we reverse and remand for an evidentiary hearing or attachment of portions of the record, should any exist, that conclusively refute this claim.
REVERSED and REMANDED.
STEVENSON, J., concurs.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
This court has previously held that counsel may be ineffective for failing to preserve the issue of being compelled to stand trial in identifiable prison clothes. See Palmer v. State, 831 So.2d 725 (Fla. 4th DCA 2002); Pineda v. State, 805 So.2d 116 (Fla. 4th DCA 2002); see also Cramer v. State, 843 So.2d 372 (Fla. 2d DCA 2003); Waters v. State, 779 So.2d 625 (Fla. 1st DCA 2001). These cases require a hearing in this case.
To raise the issue of prison garb or restraints on direct appeal, a defendant must object at trial. The holding of Bello v. State, 547 So.2d 914 (Fla.1989), is that a hearing on the necessity of restraint devices must "precede the decision to shackle if a defendant timely objects and requests an inquiry into the necessity for the restraints." Jackson v. State, 698 So.2d 1299, 1302 (Fla. 4th DCA 1997) (emphasis added); see Finney v. State, 660 So.2d 674, 682-83 (Fla.1995); Taylor v. State, 848 So.2d 448 (Fla. 4th DCA 2003). Allowing restraint devices is not fundamental error that does not require an objection at trial. Nor is there a rule of criminal procedure that requires a hearing before the decision to shackle, even in the absence of an objection.
Nonetheless, it seems to me that a prudent judge should initiate the inquiry into a defendant's restraints or shackles at trial, even where there is no objection. This would remove the issue from the post conviction relief arena, where a separate hearing *907 will almost always be required on the issue.
Very little has been written in Florida on what type of issues the trial judge should consider in a 3.850 hearing focusing on the failure to object to prison garb or shackles at trial. Some issues might include whether the failure to object was part of counsel's trial strategy or that it occurred with the defendant's consent. See Demurjian v. State, 727 So.2d 324, 327 (Fla. 4th DCA 1999). Another issue might be whether the trial court would have determined that shackling was appropriate had it been raised at trial, because it was justified "by an essential state interest specific to [the] trial." Jackson, 698 So.2d at 1302 (citation omitted).
A significant issue at a post conviction relief hearing could be whether a defendant can satisfy the prejudice prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, a defendant seeking post conviction relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. Id. at 697, 104 S.Ct. 2052. To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. Strickland defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." Id. Deciding whether prejudice occurred involves examining the role that counsel's purported error played in the total context of the trial.
Presented with the same issue as this case, two state courts have examined the strength of the evidence in the case and concluded that the defendant seeking post conviction relief did not meet his burden of proof. See State v. King, 804 So.2d 57, 61 (La.Ct.App.2001); Davis v. Armenakis, 151 Or.App. 66, 948 P.2d 327, 330-31 (1997). As the first district has written in Sanders v. State, 847 So.2d 504 (Fla. 1st DCA 2003), the prejudice analysis on post conviction relief is different from the harmless error analysis engaged in by an appellate court on direct appeal:
Significantly, the test for prejudicial error in conjunction with a direct appeal is very different from the test for prejudice in conjunction with a collateral claim of ineffective assistance. There are different tests because, once a conviction becomes final, a presumption of finality attaches to the conviction. Thus, as Goodwin [v. State, 751 So.2d 537, 546 (Fla.1999)] explains, the test for prejudice on direct appeal is the harmless error test of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), under which trial court error will result in reversal unless the prosecution can prove "beyond a reasonable doubt" that the error did not contribute to the verdict obtained. Conversely, however, as explained in Strickland, prejudice may be found in a collateral proceeding in which ineffective assistance of counsel is claimed only upon a showing by the defendant that there is a "reasonable probability" that counsel's deficient performance affected the outcome of the proceeding.
Id. at 506-07 (citation omitted) (emphasis in original).