MAY, C.J.
Criminal punishment of juvenile offenders and the United States Constitution come face to face in this appeal. The defendant appeals his life sentence[1] on a violation of probation stemming from his conviction on multiple felony charges when he was fourteen years of age. He argues, among other issues, that the Eighth Amendment’s protection against cruel and unusual punishment prohibits the court from imposing a life sentence without the possibility of parole for a crime, other than homicide, committed while he was under the age of eighteen. We agree and reverse on this issue. The remaining issues are either moot or without merit.
At the age of fourteen, the defendant committed several violent robberies of senior citizens. The State charged the defendant as an adult with four counts of robbery, two counts of battery on a person over sixty-five, one count of aggravated battery on a person over sixty five, one *296 count of battery, and one count of burglary of a conveyance with an assault or battery.[2] The defendant entered an open plea of guilty on all charges.
The court wanted to craft a sentence which could rehabilitate the defendant while ensuring public safety. The State suggested that the court sentence the defendant on the burglary of a conveyance with an assault or battery, a life felony, to adult probation to run consecutive to other juvenile sanctions. After some discussion with the prosecutor and defense counsel, the court adjudicated the defendant delinquent and committed the defendant to a maximum risk residential commitment program for an indeterminate period of time, followed by juvenile probation, not to exceed his nineteenth birthday. Upon his nineteenth birthday, the defendant would begin serving fifteen years of adult probation on the life felony charge. The defendant did not object to the sentence and did not appeal.
Shortly after the defendant turned eighteen, he was charged with the kidnapping and false imprisonment of his cousin with the intent to terrorize him. The probation officer also filed an affidavit and warrant for violation of probation.
While the jury was deliberating the kidnapping charge, the trial court conducted the final violation hearing based partly on evidence it heard during the trial. The State also called the defendant’s probation officer. The defendant testified that he knew he was not permitted to commit new crimes while on probation.
The court found the defendant had violated his probation. The jury found the defendant guilty as charged. At the sentencing hearing, defense counsel asked for a youthful offender sentence; the State requested a life sentence. The trial judge explained:
I understand that young people sometimes do stupid impulsive things.... [ ][A]nd I’ll give them a break and withhold and rehab and counseling and treatment and all that stuff, even though the law tells me I’m suppose[sic] to punish them, I have a soft spot in my heart for young people that do stupid impulsive things....
[ ][T]his is a different — entirely different creature. This is not even in the same league as the young kid doing something stupid and impulsive, these are really, really serious crimes that, [ ] represent a danger to the community .... [and] the means by which to effectuate the robbery was to go out and purposely target the weakest, most vulnerable among us, including an 80-year-old woman, and batter them, one of them batter[ed] them in a severe way, that’s not something any 13 or 14-year-old kid would do under the influence of anyone. That’s — that’s sociopathic behavior. That’s scary behavior.... This — this is predatory reprehensible violent conduct that no one would do under any stretch of the imagination.
Nevertheless, the Court System recognized that he was young, that he was youthful, that he was perhaps under the sway or influence or dominion of this older reprehensible guy that picked him up and plied him — and they gave him the break of a lifetime, a bunch of juvenile sanctions and probation on a first PBL....
But instead in 2007 no longer the young naive little 14 or 15-year-old, he goes out and commits another crime of *297 violence, kidnapping, [ ] which he was found guilty following a jury trial. [ ][A]gain, predatory type sociopathic type behavior. And for the protection of the public ... I’ll revoke and terminate his probation unsuccessfully for the burglary of a conveyance with an assault or battery, adjudicate him guilty, sentence him to life in prison....
[[Image here]]
... In [ ] the kidnapping, I will adjudicate him guilty, sentence him to life in prison.
The defendant filed a rule 3.800(b) motion asking the court to vacate his life sentences because they constituted cruel and unusual punishment. Fla. R. Crim. P. 3.800(b). The trial court denied relief. The trial court was aware of the cases then pending before the United States Supreme Court, but distinguished the present case because the defendant committed the kidnapping after he turned eighteen.
On appeal, the defendant now argues that the life sentence for burglary with an assault or battery violated the Eighth Amendment because he was fourteen years old when the crime was committed. The State responds that this case is distinguishable from Graham v. Florida, — U.S. -, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) because the defendant was eighteen when he committed the kidnapping, which served as the basis for the violation of probation.
Because we review this sentence in the context of a constitutional violation, our review is de novo. Zingale v. Powell, 885 So.2d 277, 280 (Fla.2004).
Our decision is controlled by the recent decision of the United States Supreme Court in Graham. There, the Court held that “[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide.” Id. at 2034. The Court first examined sentencing practices in jurisdictions where life sentences without parole are permitted for juvenile offenders in non-homicide cases.[3] The opinion referenced a study, which found Florida in the minority of jurisdictions that actually impose such sentences and accounted for the majority of juveniles serving life sentences without parole for non-homicide offenses. Id. at 2023.
Next, the Court undertook “consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question .... the Court also considered] whether the challenged sentencing practice serve[d] legitimate peno-logical goals.” Id. at 2026 (citations omitted). The Court paid particular attention to the differences between juveniles and adults. Id. The Court noted “juveniles have ‘a lack of maturity and an underdeveloped sense of responsibility’; they ‘are more vulnerable or susceptible to negative influences and outside pressures’ ... and their characters are ‘not as well formed.’ ” Id. (quoting Roper v. Simmons, 543 U.S. 551, 569-70, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)). In addition, the Court noted “juveniles are more capable of change than are adults, and their actions are less likely to be evidence of ‘irretrievably depraved character’ than are actions of adults.” Id. (quoting Roper, 543 U.S. at 570, 125 S.Ct. 1183).
When considering the penological goals of a life sentence without parole, the Court *298 cautioned that “[b]ecause juveniles’ ‘lack of maturity and underdeveloped sense of responsibility ... often result in impetuous and ill-considered actions and decisions,’ they are less likely to take a possible punishment into consideration when making decisions.” Id. at 2028-29 (citation omitted); see also Bell v. Haws, No. CV09-3346, 2010 WL 3447218, at *10 (C.D.Cal. July 14, 2010). By imposing a life sentence without the possibility of parole, the State effectively denies a juvenile “any chance to later demonstrate that he is fit to rejoin society based solely on a non-homicide crime that he committed while he was a child in the eyes of the law. This the Eighth Amendment does not permit.” Graham, 130 S.Ct. at 2033.
Here, the defendant is a member of that limited class of people, juvenile offenders who have committed non-homicide crimes, protected by the Eighth Amendment. See Bell, 2010 WL 3447218, at *10. The defendant was originally arrested when he was fourteen years old. Although he was an adult when he violated his probation, the probationary sentence was imposed for crimes he committed when he was fourteen. Under Graham, such a sentence violates the Eighth Amendment and is unconstitutional.
The State argues that this case is distinguishable from Graham because the defendant was eighteen when he committed the offense that violated his probation. While true, he was separately sentenced to life for the new crime he committed when he was eighteen. He cannot, however, receive a life sentence for the crimes he committed when he was fourteen years old.
Graham fashioned a bright line rule prohibiting the imposition of a life sentence without parole on a person who commits an offense, other than a homicide, while under the age of eighteen. See also Lavrrick v. State, 45 So.3d 893 (Fla. 3d DCA 2010) (reversing a life sentence imposed on an eighteen-year-old defendant for violating probation imposed for non-homicide offenses committed while he was sixteen). Any deviation from that rule casts doubt on the very underpinnings of the Supreme Court’s decision. We therefore reverse the life sentence on the violation of probation and remand the case to the trial court for resentencing on the violation only.

Reversed and Remanded.

DAMOORGIAN and CONNER, JJ., concur.

. Because Florida abolished parole, a life sentence is without the possibility of parole. See § 921.002, Fla. Stat. (2007) ("The provisions of chapter 947, relating to parole, shall not apply to persons sentenced under the Criminal Punishment Code.”).

. The State direct filed against the defendant, pursuant to section 985.557, Florida Statutes (2007).

. Paolo G. Annino, David W. Rasmussen & Chelsea B. Rice, Juvenile Life Without Parole for Non-Homicide Offenses: Florida Compared to Nation (FSU College of Law, Public Law Research Paper No. 399, Sept. 14, 2009), available at http://papers.ssm.com/sol3/ papers.cfm?abstract_id= 1490079.