IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ROBERT LEE HENDERSON,

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-0917

Opinion filed March 10, 2017.

An appeal from the Circuit Court for Okaloosa County.
William F. Stone, Judge.

Andy Thomas, Public Defender, and David A. Davis, Assistant Public Defender,
Tallahassee; Bruce Miller, Public Defender, and Katherine R. Jaquet, Assistant
Public Defender, Shalimar, for Appellant.

Pamela Jo Bondi, Attorney General, and Virginia Harris, Assistant Attorney
General, Tallahassee, for Appellee.

PER CURIAM.

      AFFIRMED.

WETHERELL and KELSEY, JJ., CONCUR; MAKAR, J., CONCURS WITH
OPINION.

MAKAR, J., concurring.

On trial for armed robbery, Robert Lee Henderson chose—against the repeated advice of his attorney and despite an extensive inquiry, abundant admonitions, and cautious cajoling from the trial judge—to wear his prison uniform rather than civilian clothes. For inexplicable reasons, Henderson wanted to wear the black jacket, white polo, and cargo shorts he wore when he was arrested, but they were not readily available, likely wrinkled and moldy from sitting in the property room for a year, and inappropriate as trial attire; he chose his prison jumpsuit instead, rejecting the freshly-laundered courtroom-appropriate clothing his lawyer provided.

In what his appellate counsel calls "an unusual, perhaps surreal, issue," Henderson argues it was error for the trial judge to require that he also be shackled during trial, a restraint to which he did not agree. On the first day of trial, prior to jury selection, the extensive discussion among the trial judge, defense counsel, and the prosecutor was initially only about whether Henderson could decide—against his interests—to wear his orange jumpsuit at trial. Once that issue was resolved in Henderson's favor, the issue of shackling was raised for the first time, defense counsel asking that the "shackles be removed" (to reduce the additional negative impact on the jury of Henderson's choice of prison clothing) and questioning the need for them ("I really don't understand how he would need to be shackled"). The

2

trial court, however, viewed the uniform and shackles as a "package deal" that couldn't be split apart. Much like "shower shoes," shackles were merely an accoutrement of prison garb that would make no difference to the jurors, who would "figure it out pretty quickly" that Henderson was currently incarcerated.

But shackles are qualitatively different than an orange jumpsuit or standard issue PVC prison shower sandals; the former is an inherently prejudicial physical restraint that implies dangerousness that might easily bias a jury. For this reason, courts have required a necessity justification if a defendant is compelled to wear a physical restraint, which was not established in this case. See Bello v. State, 547 So. 2d 914, 918 (Fla. 1989) ("Shackling is an 'inherently prejudicial practice,' *Holbrook v. Flynn,* 475 U.S. 560, 568, 106 S.Ct. 1340, 1345, 89 L.Ed.2d 525 (1986), and must not be done absent at least some showing of necessity."). Henderson did not request or agree to wear shackles; he asked only to wear his prison garb, which can be a legitimate trial strategy. See, e.g., Estelle v. Williams, 425 U.S. 501, 508 (1976) ("[I]t is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury."); Demurjian v. State, 727 So. 2d 324, 327 (Fla. 4th DCA 1999) ("Counsel testified that it was his tactic to have the jury notice that appellant was wearing prison garb to evoke sympathy."). Henderson's trial counsel argued that the shackles would make a bad situation worse, but did not specifically ask the trial judge to make

3

findings on necessity, which are an obvious safeguard of a fair trial under the Constitution whether requested or not. <u>Miller v. State</u>, 852 So. 2d 904, 906–07 (Fla. 4th DCA 2003) ("[I]t seems to me that a prudent judge should initiate the inquiry into a defendant's restraints or shackles at trial, even where there is no objection. This would remove the issue from the post conviction relief arena, where a separate hearing will almost always be required on the issue.") (Gross, J., concurring).

All this said, though the trial court should have made a finding on the necessity of forcing Henderson to wear shackles, it cannot be concluded that this error was other than harmless on the unique and slender record in this case. <u>See</u> <u>Carlisle v. State</u>, 105 So. 3d 625, 627 (Fla. 5th DCA 2013) ("While the trial court erred in requiring Mr. Carlisle to be shackled in the jury's presence, the error was harmless."). The record fails to reflect whether or to what extent the jury could see the shackles, a very important factor. <u>See</u> <u>id.</u> (noting that the trial court "took action to limit the jury's awareness of the shackles"). And it is irresolvable on the record presented what marginal prejudicial impact the shackles may have had on a jury that, by Henderson's own choice, saw him in prison garb; the predictable prejudicial impact of Henderson's voluntary and informed decision to dress as a prisoner may have been enough for the jury to see him in a different light, the additional prejudice of the shackles notwithstanding.

The trial judge, in an attempt to lessen the prejudicial effects of Henderson's sartorial choice, told the jury:

> Mr. Henderson has made an affirmative decision to be tried in this case while wearing clothing issued by the Okaloosa County Jail. This fact must not and cannot be taken into consideration by you during your deliberations, since what a person wears during trial does not constitute evidence of any kind. Furthermore, you must not and cannot make any inferences towards Mr. Henderson's guilt or innocence based upon the clothing he has chosen to wear during this trial. If Mr. Henderson's clothing has any affect [sic] on your deliberations or verdict, it will be an invalid verdict.

The intent of this jury instruction is laudable; the trial judge was trying to constrain Henderson's self-inflicted harm. Because it mentions only "clothing," it may have highlighted to some jurors that Henderson's choice extended to only his jumpsuit and not the shackles, thereby inferentially suggesting they were necessary for courtroom security purposes. But again, the record gives us nothing upon which to rely in assessing the matter. And the trial judge's questioning of the jury post-verdict (asking whether Henderson's "appearance in jail clothing influence[d] your verdict in any way?") confirmed that all jurors believed they had made an independent judgment based only on the evidence at trial. For these reasons, and the sufficient evidence to support the jury's verdict, the trial judge's failure to establish the necessity of the shackles did not result in a miscarriage of justice. § 59.041, Fla. Stat. (2017).