NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

AARON RAMON SHAW,                )
                                 )
            Appellant,           )
                                 )
v.                               )          Case No. 2D17-4664
                                 )
STATE OF FLORIDA,                )
                                 )
            Appellee.            )
_____ )

Opinion filed September 11, 2020.

Appeal from the Circuit Court for DeSoto
County; Don T. Hall, Judge.

Howard L. Dimmig, II, Public Defender,
and Matthew D. Bernstein, Assistant
Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Kiersten E. Jensen,
Assistant Attorney General, Tampa,
for Appellee.


NORTHCUTT, Judge.

A jury convicted Aaron Shaw of one count of battery on a Florida Civil

Commitment Center staff member.  Shaw's trial was tainted by a trial court order

requiring Shaw to either wear a stun belt or leave the courtroom.  We therefore reverse

Shaw's conviction and remand for a new trial.

Shaw's trial began with his objection to the trial court's pretrial ruling that he would be required to wear a stun belt in the courtroom. Shaw complained that he has mental and emotional issues that can be exacerbated by wearing a stun belt. Based on past experience, he feared that wearing the device would be a trigger that would cause him to act out in the courtroom, disrupt the proceedings, and lead to his being stunned. He urged the court in lieu of his wearing a stun belt to post a deputy near him to alleviate any concern the court might have.[1]

---

[1]At trial, the State did not contest Shaw's claim that he suffers from schizophrenia and antisocial disorder, and it has expressly acknowledged the latter diagnosis in its answer brief. Shaw pleaded with the court:

> Well, the problem is, Judge I'm schizophrenic, right? And I got -- I showed her the record. I got the paperwork, right? And I have a -- it triggers me. Every courtroom I've been in them, I had psychiatrists -- I didn't bring the transcripts from that, but they told the judges this is a trigger for Mr. Shaw. Mr. Shaw can behave himself, he's not going to act out inappropriate, but if you put this belt on him -- any kind of stimuli, you put the stimuli on him and, you know, it steers the fear and then -- which elevates me, you know, creates me to, you know -- to -- to do inappropriate stuff.
>
> So I don't -- in order for me to be conscious and appropriate and assistant, and behavior, you know, it's not to have all these interferences; okay? I've never -- I've always given you my word, Judge. If I tell you this not going to be a problem, I'm not going act out, I'm not going to try to swing on anybody, I'm not going to get upset in the courtroom and do something stupid, you know? But these stimuli, it's just like a person being afraid of heights, you know? A person being afraid to swim in water. I'm afraid of what -- the thought, you know, just thought itself triggers me.
>
> And I just got finished speaking to your deputies and I was telling them that in the past what they have done is provided -- if they was able to, extra security or whatever or put somebody by me or whatever, if they had a problem. Everything always went -- went without incident, no problem,

Unpersuaded, the trial court told Shaw that he could either sit in the courtroom wearing the stun belt or sit outside the courtroom, listen to the trial through an earpiece, and have his counsel come out and talk with him between witnesses. Shaw chose the latter option and confirmed for the court that he was waiving his appearance: "Due to the belt, yes, because it's a trigger for me, it's a trigger. So it's going to create a disruption in the Court, you know? I'm not going to cause that on myself or anybody else. I can't wear that belt."

Shaw was absent for all of jury selection, opening statements, and the testimony of the first seven witnesses, including several eyewitnesses to the alleged battery. He returned to the courtroom for the State's last witness, the victim in the case. There was no discussion on the record describing why he decided to return or indicating whether he was wearing the stun belt. The court merely stated, "For the record, Mr. Shaw is present in the courtroom now." Shaw attended what remained of the trial and testified in his defense without incident or further discussion of the stun belt. He was convicted as charged and sentenced to five years in prison.

The trial court's unelaborated order requiring Shaw to wear a stun belt was error. A defendant has the right to be free of physical restraints, such as shackles and so forth, when in the presence of the jury. Weaver v. State, 894 So. 2d 178, 193 (Fla. 2004). The right is not absolute, and "[r]estraints 'may be necessary to prevent the

---

even in the jail. The jail over there, I never had incident. No incident of violence or anything, you know?

So it's just stimuli. I just show[ed] her my paperwork. I left it on the bench in there where it shows that I -- that I do have these issues, you know?

defendant from disrupting the trial . . . and to protect the physical well-being of the jury, lawyers, judge, and other trial participants.' " Id. (quoting Israel v. State, 837 So. 2d 381, 390 (Fla. 2002)).  The use of restraints is within the discretion of the trial court, id., "provided that [the court] has made the requisite findings that such shackles are necessary." Hernandez v. State, 4 So. 3d 642, 658 (Fla. 2009) (emphasis added).  The principles governing the use of physical restraints at trial apply as well to the use of stun belts.  Weaver, 894 So. 2d at 193.

Here, the trial court made no finding that could have justified requiring Shaw to wear a stun belt in the presence of the jury.  At the beginning of the trial there was a protracted discussion of the stun belt, but that exchange focused on Shaw's opposition to wearing the belt and his explanation for his reluctance to do so.  Although the court expressed its desire "to enforce the security measures in the courtroom," neither the State nor the court expounded on the need for the belt specifically in Shaw's case, e.g., whether Shaw's history included violent convictions, violent outbursts, courtroom disruptions, or the like.  Cf. Miller v. State, 852 So. 2d 904, 905 (Fla. 4th DCA 2003) (holding that restraints were unjustified when "[n]othing in the record indicate[d] that [the defendant] had any courtroom outbursts or otherwise demonstrated a potential escape or injury risk while in court").

Moreover, Shaw's prior convictions (for sexual battery, kidnapping, and battery on a law enforcement officer) would not in themselves have been enough to warrant the use of restraints without additional evidence of prior courtroom disruptions, a genuine threat to public safety, or a risk of escape.  See id. ("[The defendant's] prior armed robbery convictions, the most recent in 1985, are not sufficient alone to

- 4 -

necessitate the extreme restraint measures that were used here [(handcuffs, a waist chain, leg irons, and a stun belt)].");  see also Smith v. State, 41 So. 3d 1081, 1088 (Fla. 2d DCA 2010) (differentiating between disruptive behavior outside the courtroom and disruptive behavior inside the courtroom, the former of which does not necessarily justify the use of restraints).

In most cases involving physical restraints, the attendant prejudice lies in the jury's awareness that the defendant is restrained.  See Miller, 852 So. 2d at 905 ("Allowing a defendant to appear before the jury in restraint devices is an inherently prejudicial practice that undermines the presumption of innocence and the right to a fair trial.").  But in this case the record does not reflect whether the jury was aware that Shaw was absent because he would not wear the stun belt, nor can we discern whether the jury might have been aware that he was wearing the belt when he eventually appeared late in the trial, if he was indeed wearing one at that point.  If either of those occurred, of course, Shaw would be entitled to a new trial on that basis alone.

Either way, however, it is certain that the trial court's unsupported insistence that Shaw wear a stun belt effectively deprived him of his right to be present during most of his trial.  We reject the State's argument that Shaw's nonattendance was voluntary and that he waived his right to be present.  Manifestly, under the circumstances of this case Shaw's absence was not truly voluntary.  See generally Turner v. State, 530 So. 2d 45, 49 (Fla. 1987) ("A defendant's waiver of the right to be present at essential stages of trial must be knowing, intelligent and voluntary." (citing Amazon v. State, 487 So. 2d 8 (Fla. 1986))).

Unsurprisingly, we have not found any case law addressing voluntariness in this unique circumstance. This is not the typical situation in which a defendant attempts to evade capture or to frustrate the judicial process by fleeing or otherwise refusing to attend trial. See, e.g., Capuzzo v. State, 596 So. 2d 438, 440 (Fla. 1992) (fleeing); Dufour v. State, 495 So. 2d 154, 161 (Fla. 1986) (hunger-strike-induced hospitalization). Rather, the trial court forced Shaw to elect either to abandon his right to attend his trial or to comply with an unjustified order that he wear a restraint that likely would disrupt the proceedings and severely prejudice him before the jury. It is impossible to conclude that Shaw voluntarily absented himself or that he willingly waived his Sixth Amendment right to be present for his trial.

The question remains whether this violation of that right was harmless.

> A violation of the right to be present is subject to a harmless error analysis. See Smithers v. State, 826 So. 2d 916, 927 (Fla. 2002). "In other words, when the defendant is involuntarily absent during a crucial stage of adversary proceedings contrary to rule 3.180(a), the burden is on the state to show beyond a reasonable doubt that the error (absence) was not prejudicial." Garcia v. State, 492 So. 2d 360, 364 (Fla. 1986). "[W]hile rule 3.180(a) determines that the involuntary absence of the defendant is error in certain enumerated circumstances, it is the constitutional question of whether fundamental fairness has been thwarted which determines whether the error is reversible." Id. Under this standard, we have found harmless error where the defendant suffered no prejudice from his absence, "the defendant would not have been able to assist his counsel in opposing adverse rulings," or "no adverse rulings were made outside the defendant's presence." Ault v. State, 53 So. 3d 175, 202 (Fla. 2010) (citing Pomeranz v. State, 703 So. 2d 465, 471 (Fla. 1997); Roberts v. State, 510 So. 2d 885, 890–91 (Fla. 1987); Garcia, 492 So. 2d at 363).

Jordan v. State, 143 So. 3d 335, 338–39 (Fla. 2014).

The State contends that Shaw's absence from the trial was harmless because he received constructive notice of the proceedings through his counsel's presence in the courtroom. We find this argument unpersuasive.

Constructive notice of trial proceedings may be imputed to a defendant "when a defendant is absent from a portion of his trial, where he knew or should have known of the proceedings, . . . when he is represented by counsel to whom he has not objected, and when his counsel waives objection to the defendant's absence." State v. Melendez, 244 So. 2d 137, 139 (Fla. 1971). But this principle is "limited to those cases in which the defendant, upon his reappearance at his trial, acquiesces in or ratifies the actions taken by his counsel during his absence." Id. Indeed, a waiver of this kind may be found only when, upon the defendant's return, he "freely and willingly, knowingly and with understanding, waives objection to and ratifies the actions taken by his counsel." Id. at 140. This does not mean "that a defendant's absence due to lack of notice or which is otherwise involuntary can be subsequently cured by defendant's silent acquiescence in continuation of his trial, without a showing of actual or constructive knowledge." Id.

In this case, Shaw never in any way ratified anything that occurred at his trial when he was outside the courtroom. He merely reappeared; whereupon the trial continued without any comment from Shaw, without any discussion of the proceedings that occurred in his absence, and without any indication that Shaw even knew what had transpired. To the contrary, at one point after defense counsel returned to the courtroom after consulting with Shaw, he reported that Shaw was not even wearing the earpiece that would have enabled him to listen to the trial. At most, this was merely a

"silent acquiescence in continuation of his trial." Id. at 140. Thus, Shaw's involuntary absence from his trial was not cured or waived by the presence of his attorney and his mere failure to object upon returning. The error here was not harmless.

We reverse Shaw's conviction and remand for a new trial. Should the trial court believe, in its discretion, that special restraints such as the stun belt are justified at Shaw's retrial, it must make express and specific findings on the record explaining that decision.

Reversed and remanded.


LaROSE and SMITH, JJ., Concur.