DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHEROD C. GREENE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-2856

[May 5, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin S. Fein, Judge; L.T. Case No. 14004764-CF10A.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Sherod Greene appeals his conviction and sentence for one count of False Imprisonment and two counts of Battery. On appeal, Appellant makes three arguments. We affirm on two of these issues without discussion, noting that any error was harmless beyond a reasonable doubt. The remaining issue concerns Appellant's contention that the trial court reversibly erred and violated his constitutional rights by having him appear for identification before the jury while surrounded by officers and while wearing jail clothes and restraints. As discussed below, we find no error with respect to the trial court's rulings on this matter. Accordingly, we affirm the final judgment.

**Background**

Appellant was charged by Information with one count of Kidnapping with Intent to Inflict Bodily Harm or Terrorize ("Count 1"), one count of Felony Battery by Strangulation ("Count 2"), and one count of Battery ("Count 3"), arising out of an incident involving his then-girlfriend, the victim in the instant case.

Appellant was uncooperative from the very beginning of trial. Immediately after going on record, the trial court noted that defense counsel had informed the court that Appellant "would not put on . . . trial clothes" and that Appellant would not "wear[] anything that comes from the government[.]" Shortly thereafter, when Appellant was brought into the courtroom and asked if he would "stay right there right at the table[,]" Appellant gave a non-responsive and unintelligible answer.

The trial court informed Appellant that it wanted him to participate in his trial, and asked Appellant if he was "able to conform [his] conduct with what's required for proper courtroom decorum[.]" Appellant responded that "ex-relation [Appellant], hereby declares to, in fact, have not, do not, and will not answer any questions."

While addressing several pre-trial motions, the trial court again asked Appellant if he wanted to sit down and participate in his trial. Appellant repeated his previous response. Based on Appellant's non-compliance, the State suggested options with respect to Appellant's presence in the courtroom. The trial court found that Appellant was not dangerous "in any way, shape, or form," but noted that Appellant "doesn't want to be here." Accordingly, the trial court opted to remove Appellant from the courtroom, stating that "[i]f [Appellant] doesn't want to avail himself to the due process of the greatest criminal justice system on the face of the earth, that's his call."[1]

On the second day of trial, following Appellant's continued refusal to answer questions or to sit down—and, consequently, Appellant's absence from the courtroom—the State notified the court of its intention to have the victim provide an in-court identification of Appellant as part of its case-in-chief. The trial court thereafter asked Appellant if he would like to change into trial clothes so that the jury did not see him in prison clothes and in shackles, subsequently noting that Appellant was "facing away from [the court]" and "refusing to answer any questions."[2]

The parties next discussed the proper procedure for an in-court identification of Appellant. Defense counsel suggested that the trial court conduct an in-court identification outside the presence of the jury and then inform the jury that an identification had been made, as counsel did not have Appellant's permission to stipulate that the victim had identified

---

[1] Defense counsel does not challenge Appellant's removal from the courtroom.
[2] The court frequently noted on the record that Appellant was facing away from it.

him. The State, in turn, maintained that it was entitled to prove identification in the presence of the jury and that Appellant should not benefit from being disruptive. Moreover, the State argued its case would be harmed if the jury was not allowed to itself determine whether the victim's identification of Appellant was genuine.

Over defense counsel's objection, the trial court granted the State's request for an in-court identification in the presence of the jury. Notably, however, the trial court offered Appellant one more opportunity for identification *outside* the presence of the jury if Appellant agreed to stipulate that the victim had identified him as the perpetrator. Despite defense counsel encouraging him to agree, Appellant proclaimed instead "that I have not, do not, and will not answer any questions."

After the State called its first witness, the trial court again brought Appellant before the court (and outside the presence of the jury), and stated:

> I do see you're wearing the gray-and-white-striped jail uniform. "Max Custody Inmate" written in red on the back. I believe the State is going to call a witness this afternoon in which they're requesting a procedure for an in-court identification. I'm going to do that at first outside the presence of the jury just to see how that goes. I'm trying to balance your due process rights and your constitutional right with the State's right to put their case on.
>
> So, number one, as you know [defense counsel] dropped off trial clothes for you. If you want to change into those trial clothes so the jurors don't see you in that jail uniform, I can make that happen[.]

The trial court also informed Appellant that it would have Broward County Sheriff's Office ("BSO") deputies physically turn him to face the witness stand if he was uncooperative during any resulting in-court identification, which the court noted would require "some modicum of physical force[.]" Appellant, however, remained obstinate and would not answer questions.

On that same date, and at the start of trial on the third day, the trial court brought Appellant into the courtroom and informed him that he could change out of his jail clothes and that the court would later instruct deputies to use whatever physical force necessary to make Appellant face the witness stand. As reiterated by the court, "[i]f I could get the slightest bit of cooperation from you, we would not have to do that. And again, I

3

don't think it's necessary. We're in a civilized society. This is a civilized courtroom, so I don't want to take those measures." Despite the trial court's request for cooperation, Appellant repeated that "ex-relation [Appellant], hereby declare to have not, do not, will not answer any questions."

Later that day, the parties further discussed issues concerning the victim's potential in-court identification of Appellant. The State argued that identification of the individual charged with a crime is an element of the crime itself, and that "stipulating to an element of the crime, if the defendant hasn't consented to that . . . is an automatic 3.850."[3]

After Appellant was given two additional opportunities to change out of his jail clothes and to cooperate with the court, the trial court conducted an in-court identification of Appellant *outside* the presence of the jury for the first time. In order to do so, BSO deputies turned Appellant so that he would face the witness stand, and the victim subsequently identified Appellant as the perpetrator. The trial court noted that the procedure "seems actually for the record quite harmless. [Appellant is] not physically resisting. He's just pointed at the witness stand. His head is facing down. Again, he's in the jail uniform, handcuffs, waist chain. I would have him happily get out of that. But he's not going to cooperate."

At that point, defense counsel argued that the victim's identification outside the presence of the jury was sufficient, objecting to any identification in the presence of the jury. In response, the court was prepared to allow defense counsel to stipulate that "[Appellant] is the person that kidnapped [the victim]." Defense counsel, however, was unwilling to agree to the stipulation as it was phrased.

The trial court therefore conducted an in-court identification of Appellant in the presence of the jury. BSO deputies again turned Appellant's head toward the witness stand, and the victim identified Appellant before the jury as the individual in the gray-and-white clothing. Appellant was then immediately removed from the courtroom following the jury's excusal.

Due to Appellant being before the jury "shackled, handcuffed, [in] waist chains, max custody yard, being held by four deputies in front of the jury," defense counsel requested a mistrial. The trial court summarily denied the request.

---

[3] The "automatic 3.850" statement is a reference to a claim of ineffective assistance of counsel filed under Fla. R. Crim. P. 3.850.

Ultimately, the jury found Appellant guilty of the lesser included offenses of False Imprisonment and Battery as to Counts 1 and 2, respectively, and found Appellant guilty as charged of Battery on Count 3. The trial court adjudicated Appellant guilty on all three counts, sentencing him to five years on Count 1, and to 364 days on both Counts 2 and 3, with the sentences to run consecutively. Appellant timely appealed.

## Analysis

"A trial court's ruling on a motion for mistrial is subject to an abuse of discretion standard of review." *England v. State*, 940 So. 2d 389, 402 (Fla. 2006). However, we review alleged constitutional violations under a *de novo* standard of review. *Guzman v. State*, 68 So. 3d 295, 297 (Fla. 4th DCA 2011).

"[I]f a defendant is to be presumed innocent, [the defendant] must be allowed to display the indicia of innocence." *Jackson v. State*, 698 So. 2d 1299, 1302 (Fla. 4th DCA 1997). The presumption of innocence "is a basic component of the fundamental right to a fair trial." *Pineda v. State*, 805 So. 2d 116, 117 (Fla. 4th DCA 2002). Whereas "the mere viewing of a defendant in the custody of officers does not raise a question of denial of indicia of innocence," that is not necessarily the outcome "in cases in which the accused is brought into court in prison garb or shackles." *Maxwell v. Wainwright*, 490 So. 2d 927, 930–31 (Fla. 1986). "Showing [a defendant] in jail clothing during [the defendant's] criminal jury trial undermines the presumption of innocence to which [the defendant] is entitled." *Thompson v. State*, 192 So. 3d 711, 711 (Fla. 1st DCA 2016). Similarly, "[a]llowing a defendant to appear before the jury in restraint devices is an inherently prejudicial practice that undermines the presumption of innocence and the right to a fair trial." *Miller v. State*, 852 So. 2d 904, 905 (Fla. 4th DCA 2003).

Accordingly, when examining if there has been a constitutional violation, we focus not upon the presence of officers, but upon a defendant's appearance before the jury in prison attire or shackles.[4] The trial court must be mindful not only of a defendant's fundamental right to a fair trial, but also of equal protection concerns, as "compelling the accused to stand trial in jail garb operates usually against only those who cannot post bail prior to trial." *Pineda*, 805 So. 2d at 117 (quoting *Estelle*

---

[4] That is not to say that there are no circumstances under which the presence of officers may be prejudicial to a defendant's right to a fair trial. *See generally Shootes v. State*, 20 So. 3d 434 (Fla. 1st DCA 2009), and cases cited therein.

5

*v. Williams*, 425 U.S. 501, 505–06 (1976)). Moreover, "[i]n deciding whether to physically restrain a defendant and what method to use, the court must balance its obligation to maintain courtroom safety against the risk 'that the security measures may impair the defendant's presumption of innocence.'" *Jackson*, 698 So. 2d at 1302 (quoting *Diaz v. State*, 513 So. 2d 1045, 1046 (Fla. 1987)).

Nonetheless, while allowing a defendant to appear before the jury in prison attire or shackles may be inherently prejudicial, *see Miller*, 852 So. 2d at 905, "a defendant's appearance in shackles or prison clothes does not automatically warrant a new trial." *Lynch v. State*, 260 So. 3d 1166, 1172 (Fla. 1st DCA 2018); *see also Topley v.* State, 416 So. 2d 1158, 1160 (Fla. 4th DCA 1982) (stating that a defendant's appearance in jail attire is not necessarily reversible). This is especially the case when a defendant's appearance before the jury in an intrinsically prejudicial manner is attributable to the defendant's own actions. "[P]rison clothes and shackling are not prejudicial when a defendant himself injects his incarceration into the case." *United States v. Wilson*, 979 F.3d 889, 915 (11th Cir. 2020); *see also Atkins v. State*, 210 So. 2d 9, 10–11 (Fla. 1st DCA 1968) (noting that a defendant should be dressed in civilian clothing except for "extraordinary circumstances" such as "where the defendant himself is responsible for the absence of civilian attire"). When a defendant acts obstreperously, binding or shackling the defendant is "a constitutionally permissible method of handling [the] defendant." *Jones v. State*, 449 So. 2d 253, 262 (Fla. 1984).

In *Jones*, a defendant complained that he "was greatly prejudiced and thereby denied his constitutional right to a fair trial when he was chained to his chair in the presence of the jury." *Id.* at 259. After the defendant attempted to argue various motions outside the presence of the jury that had already been addressed, the trial court repeatedly told the defendant to take a seat, informing him that it would shackle him to a seat at the defense table if he did not do so. *Id.* at 259–60. The defendant remained uncooperative, and the trial court therefore shackled him to the chair as promised. *Id.* at 260. The defendant was convicted, and the Florida Supreme Court ultimately heard his appeal. That court held that the trial court was justified in shackling the defendant, noting that "[w]hatever prejudice defendant suffered resulted from his own willful attempt to disrupt, indeed stop, the orderly proceedings of the court." *Id.* at 261.

In the instant case, Appellant was presented with a *multitude* of opportunities to change into civilian clothes and to not appear before the jury in an inherently prejudicial manner. Appellant was also given several opportunities to stipulate that the victim had identified him outside the

presence of the jury. However, Appellant chose to be uncommunicative and uncooperative. While the trial court did not find Appellant dangerous, Appellant repeatedly refused to answer every question posed by the court, and—as in *Jones*—refused to sit down with his counsel despite the trial court's repeated requests. Accordingly, any potential prejudice was a result of Appellant's own actions. As such, this is the "*extraordinary circumstance . . . where the defendant himself is responsible for the absence of civilian attire.*" *Atkins*, 210 So. 2d at 10–11 (emphasis added). Consequently, the trial court did not abuse its discretion in denying Appellant's motion for mistrial.

## Conclusion

Because we hold that Appellant's appearance before the jury in prison clothes and shackles—while surrounded by BSO deputies—was not prejudicial under the "extraordinary circumstance[s]" presented here, Appellant's constitutional right to a fair trial was not violated and the trial court did not abuse its discretion in denying a motion for mistrial based on such. We affirm as to all issues raised by Appellant on appeal.

*Affirmed.*

WARNER and DAMOORGIAN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

7